**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> BECKHOFF AUTOMATION, LLC et al., ) <br> ) <br> Defendants. ) <br> ) | 2:13-cv-01616-RCJ-NJK <br><br> **ORDER** |

This case arises out of the alleged infringement of five of Plaintiff's Patents for its motor systems. Pending before the Court, *inter alia*, are a Motion for Preliminary Injunction (ECF No. 8), a Motion to Dismiss for Lack of Personal Jurisdiction and to Transfer Venue (ECF No. 51), a Motion to Strike Affirmative Defense for Invalidity (ECF No. 53), a Motion to Dismiss Counterclaim for Invalidity (ECF No. 54), and a Motion to Reconsider the Magistrate Judge's Order (ECF No. 94).

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiff Rockwell Automation, Inc. ("Rockwell") is a Delaware corporation with its principal place of business in that state. (Compl. ¶ 1, Sept. 5, 2013, ECF No. 1). Defendant Beckhoff Automation, LLC ("Beckhoff") is a Maryland limited liability company with its principal place of business in Minnesota. (*See id.* ¶ 2). Defendant Beckhoff Automation GmbH ("Beckhoff Germany") is a German corporation with its principal place of business in Germany.

(*Id.* ¶ 3).

Plaintiff is the owner by assignment of U.S. Patent Nos. 5,994,798 ("Closed-Path Linear Motor"); 5,965,963 ("Linear Motor with a Plurality of Stages Independently Movable on the Same Path"); 6,274,952 ("Closed-Path Linear Motor"); 6,803,681 (Path Module for a Linear Motor, Modular Linear Motor System, and Method to Control Same"); and 6,713,902 ("Closed-Path Linear Motor"). (*Id.* ¶¶ 9–23). Plaintiff sued Defendants in this Court, alleging direct infringement of each of the Patents under 35 U.S.C. § 271(a) "by making, using, offering for sale, selling within the United States, and/or importing into the United States its products, including but not limited to its products identified as the 'XTS' and 'eXtended Transport System,'" (*see id.* ¶¶ 25, 33, 41, 49, 57), and indirect infringement of each of the Patents under § 271(b) and/or (c) "by providing and/or selling the products identified above to customers and/or users of those products," (*see id.* ¶¶ 27, 35, 43, 51, 59). The Court granted a motion for a temporary restraining order in part, restraining Defendants, *inter alia*, from accepting orders for the XTS system for sale within the United States or transporting the XTS system products and components exhibited at the Pack Expo 2013 show in Las Vegas, Nevada outside of the United States. The accompanying preliminary injunction motion remains pending. Defendants have moved to dismiss as against Beckhoff Germany for lack of personal jurisdiction and to transfer the case to the District of Minnesota. Plaintiff has moved to dismiss Defendants' counterclaim for invalidity and to strike Defendants' affirmative defense for invalidity.

## II.    LEGAL STANDARDS

### A.    Personal Jurisdiction

A defendant may move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Jurisdiction exists if: (1) provided for by law; and (2) the exercise of jurisdiction comports with due process. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1207 (9th Cir. 1980). When no federal statute governs personal jurisdiction, a federal court applies the law of

the forum state. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as Nevada's does, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 134 P.3d 710, 712 (Nev. 2006) (citing Nev. Rev. Stat. § 14.065), a court need only apply federal due process standards, *see Boschetto*, 539 F.3d at 1015.[1]

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. General jurisdiction exists over a defendant who has "substantial" or "continuous and systematic" contacts with the forum state such that the assertion of personal jurisdiction over her is constitutionally fair even where the claims are unrelated to those contacts. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1171 (9th Cir. 2006) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)). A state court has general jurisdiction over the state's own residents, for example.

Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient minimal contacts with the forum state such that the assertion of

---

[1] Nevada's long-arm rule restricts extra-territorial jurisdiction to the limits of both the U.S. and Nevada Constitutions. *See* Nev. Rev. Stat. § 14.065(1). However, Nevada's due process clause is textually identical to the federal clause in relevant respects, *see* Nev. Const. art. 1, § 8(5), and the Nevada Supreme Court reads the state clause as coextensive with the federal clause, *see, e.g., Wyman v. State*, 217 P.3d 572, 578 (Nev. 2009). Until 1868, when the Fourteenth Amendment was adopted, the Due Process Clause of the Fifth Amendment did not apply to the states. *See Barron v. City of Baltimore*, 32 U.S. 243, 250–51 (1833) (Marshall, C.J.). The Declaration of Rights that comprises Article I of the Nevada Constitution, which was adopted in 1864, was included in order to impose certain restrictions on the State of Nevada that were already imposed against the federal government under the Bill of Rights, and the Nevada Supreme Court has not interpreted the protections of the Declaration of Rights to exceed the scope of their federal counterparts. Michael W. Bowers, *The Sagebrush State* 43–44 (3rd ed., Univ. Nev. Press 2006); Michael W. Bowers, *The Nevada State Constitution* 24 (1993). During the Nevada Constitutional Convention in 1864, the Due Process Clause of Article I was not debated, although several other provisions of Article I, and even Section 8, were heavily debated. *See generally* Andrew J. Marsh, Official Report of the Debates and Proceedings of the Constitutional Convention of the State of Nevada (Frank Eastman pr., 1866), *available at* http://books.google.com.

personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken*, 311 U.S. at 463).  The standard has been restated using different verbiage. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (citing *Int'l Shoe Co.*, 326 U.S. at 319)); *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (citing *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 97–98 (1978))).  From these cases and others, the Ninth Circuit has developed a three-part test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

> The plaintiff bears the burden on the first two prongs.  If the plaintiff establishes both prongs one and two, the defendant must come forward with a "compelling case" that the exercise of jurisdiction would not be reasonable.  But if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed.

*Id.* (citations omitted). The "purposeful direction" option of the first prong uses the "*Calder*-effects" test, under which "the defendant allegedly must have (1) committed an intentional act,

(2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)).  The third prong is a seven-factor balancing test, under which a court considers:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 107, 1112 (9th Cir. 2004)).

**B.     Counterclaims**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). In other words, under the modern interpretation of Rule 8(a), a plaintiff must do more than specify the legal theory under which he seeks to hold a defendant liable; he also must identify the theory of his own case so that the court can properly determine not only whether any such legal theory exists (*Conley* review), but also whether he has any basis for relief under such a theory even assuming the facts are as he alleges (*Twombly-Iqbal* review).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

### C. Affirmative Defenses

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48 (1957)). But there are differences between the respective pleading standards of claims and defenses under Rules 8(a) and 8(c), respectively. At least one district court has explicitly declined to apply the *Iqbal* standards to a Rule 12(f) motion, reasoning that *Iqbal* is based on the Supreme Court's reading of Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," but that the pleading standards for affirmative defenses under Rule 8(c) simply requires them to be "affirmatively state[d]." *See Bank of Beaver City v. Sw. Feeders, L.L.C.*, No. 4:10CV3209, 2011 WL 4632887, at *5–6 (D. Neb. Oct. 4, 2011). That court noted that the Eighth Circuit had found the bare assertion of a statute of limitations defense to be sufficient. *See id.* at *6 (quoting *Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997) (quoting *Daingerfield Island Protective Soc'y v. Babbitt*, 40 F.3d 442, 445 (D.C. Cir. 1994))). An "affirmative state[ment]" need not contain facts making the defense plausible, as under *Iqbal*, because Rule 8(c) does not require a "showing," as does Rule 8(a), but an affirmative defense must at least fairly identify the legal theory upon which it rests. *See Tyco Fire Prods. LP v. Victaulic Co.*, 777 F. Supp. 2d 893, 900 (E.D. Pa. 2011) ("In light of the differences between Rules 8(a) and 8(c) in text and purpose, the Court concludes that Twombly and Iqbal do not apply to affirmative defenses. An affirmative defense need not be plausible to survive; it must merely provide fair notice of the issue involved .").

As a matter of both fairness and efficiency, it seems improper to permit a defendant to force a plaintiff to choose between ambush at trial and needless preparation for a myriad of potential affirmative defenses consistent with a single broad affirmative defense in the answer. The purpose behind the contemporary reading of Rule 8(a) is to prevent a plaintiff from extorting

a settlement from a defendant through the prospect of an expensive, extended discovery process predicated on threadbare claims that would be seen to be legally insufficient if the actual circumstances of the alleged wrongdoing were even read, much less put to proof.  This purpose would not be served by imposing a more detailed pleading standard for affirmative defenses, because a plaintiff against whom an affirmative defense is pled already desires to invoke the discovery process and does not aim to avoid it.  A lesser efficiency-related purpose would be served, because a more stringent pleading standard for Rule 8(c) would save some costs by allowing a plaintiff to better focus some of his pretrial practice, including discovery.  Still, because of the difference in language between Rules 8(a) and 8(c), the Court will leave it to the appellate courts to institute something like a plausibility standard for Rule 8(c).  Judge Robreno's interpretation of Rule 8(c), that an affirmative defense need only "provide fair notice of the issue," is persuasive. *See Tyco Fire Prods. LP*, 777 F. Supp. 2d at 900.  This standard saves the parties and the court some amount of wasted effort in cases where a broadly stated affirmative defense can be divided into distinct legal theories, not all of which necessarily apply, but it avoids the imposition of the plausibility standard, which is based at least in part on the particular language of Rule 8(a) requiring a "showing." *See Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration removed).

**D.     Preliminary Injunction**

The Court of Appeals in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases).  The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two

points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Court of Appeals has recognized that the "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Court of Appeals' pre-Winter, "sliding-scale" standard and remanding for application of the proper standard).

A Court of Appeals ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Court of Appeals rulings and determined that the sliding scale test remained viable when there was a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). This case presents some difficulty in light of *Winter* and prior Court of Appeals cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v.*

*Geren*, 128 S. Ct. 2207, 2218–19 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)) (emphases added).  The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong.  In rejecting the sliding-scale test, the *Winter* Court emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 22, and the word modifies the success-on-the-merits prong the same way, *see id.* at 20.  In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 51 (Ginsburg, J., dissenting).  But Justice Ginsburg, like the majority, did not address whether she believed relief could be granted when the chance of success was *less than* likely.  A "lower likelihood" is still *some* likelihood.  We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

     In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits.  According to a layman's dictionary, "likely" means "having a high probability of occurring or being true." Merriam–Webster Dictionary, http://www.merriam-webster.com/dictionary/likely.  Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1012 (9th ed. 2009).  The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter*/*Selecky* "likelihood" standard, not as being in competition with it.  "Serious questions going to the merits" must therefore mean that there is at least a reasonable probability of success on the merits.  "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement that success be "likely."

///

## III. ANALYSIS

### A. Motion to Dismiss and Transfer

#### 1. Personal Jurisdiction

There is no general personal jurisdiction over Beckhoff Germany in Nevada, nor over Beckhoff for that matter. Beckhoff Germany notes that it has no operations, employees, facilities, accounts, or property in Nevada, that it has never had such contacts with Nevada, and that its only contacts with Nevada are its having sent four shipments of products to Nevada that have nothing to do with the accused product. Also, Beckhoff is not a subsidiary of Beckhoff Germany. The two companies are simply alleged to have common ownership, which fact is inapposite to personal jurisdiction. And even if Beckhoff were a subsidiary of Beckhoff Germany *and* there were general jurisdiction over Beckhoff in Nevada, neither of which appear to be the case, those facts would not be sufficient for this Court to assert general personal jurisdiction over Beckhoff Germany unless its own contacts with Nevada were so continuous and systematic as to make Nevada the "home" of the parent company itself. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760–62 (2014). Neither Beckhoff entity is at "home" in Nevada. *See id.* For the purposes of general personal jurisdiction it is clear that Beckhoff is at "home" in Maryland and Minnesota and that Beckhoff Germany is at "home" in Germany. *See id.*

*Daimler AG* clarified the distinction between general and specific personal jurisdiction. The former exists only where a company is at "home." The *Daimler AG* court noted that "continuous and systematic" contacts alone are not enough in-and-of-themselves to create general jurisdiction. The quoted phrase was in fact first used in the context of *specific* jurisdiction as conjunctive with the "arises-out-of" requirement. *See id.* at 761 (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "Accordingly, the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that

corporation's 'affiliations with the State are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *Id.* (quoting *Goodyear Dunlop Tires Operations S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (alteration in original).  The company must be at "home" in the forum state for there to be general jurisdiction.  Where this is not the case, a plaintiff must rely on specific jurisdiction, i.e., the action must have arisen out of contacts with the forum state.  Personal jurisdiction over either company in this case must therefore be specific to the present action.

      Beckhoff Germany argues that there is no specific jurisdiction over it in this case, because the only four contacts it has ever had with Nevada have nothing to do with the accused product.  Beckhoff does not dispute that Nevada has personal jurisdiction over it.  Beckhoff Germany notes that it has shipped spare parts to Las Vegas for non-parties' use in other trade shows in 2009 and 2011, but that those shipments had nothing to do with the accused product.  Beckhoff Germany also notes that in 2010 it shipped products directly to one of Beckhoff's customers in Nevada, at Beckhoff's request, but that those shipped parts also had nothing to do with the accused product.

      The Court finds that there is yet no evidence that the present action arises out of any contact of Beckhoff Germany with the state of Nevada.  Plaintiff has provided no evidence indicating that it does.  Because the "arises-out-of" test cannot yet be satisfied, the Court need not address the reasonableness of asserting personal jurisdiction over Beckhoff Germany in this case.  The fact that the Beckhoff entities share a website is inapposite.  As opposed to a case where a plaintiff in one state is induced through Internet advertising to engage in commerce with an out-of-state company, here, the website is not alleged to have any link to the allegedly infringing activity.  And even if a shared website were directly linked to the alleged infringing activity in Nevada, Plaintiff cannot rely upon the "stream of commerce" theory without more.  That is, the fact that the website is viewable in Nevada (as elsewhere), or the fact that Beckhoff Germany

might have reason to suspect that its products provided to Beckhoff or others might end up in Nevada, is not enough to assert specific jurisdiction over Beckhoff Germany in Nevada without evidence of Nevada-specific targeting. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2791–92 (2011) (Breyer, J., concurring).  The "principal inquiry" for specific personal jurisdiction is an "intention to submit to the power of a sovereign." *See id.* at 2788 (plurality opinion).  The *Nicastro* plurality rejected Justice Brennan's four-justice concurrence in *Asahi* accepting "fairness and foreseeability" as sufficient in favor of Justice O'Connor's four-justice "lead" opinion in that case requiring "purposeful[] direct[ion] toward the forum State." *See id.* "Justice Brennan's concurrence, advocating a rule based on general notions of fairness and foreseeability, is inconsistent with the premises of lawful judicial power.  This Court's precedents make clear that it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Id.* at 2789.  The *Nicastro* plurality was undisturbed by the possibility that in some cases a Defendant may be subject to the judicial authority of the United States but not subject to the judicial authority of any particular state, a potentiality that plaintiffs often argue is impossible or odd, but which the *Nicastro* plurality treated as an unoffensive result of the conjunction of traditional personal jurisdiction rules with American federalism. *See id.* ("Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State.  This is consistent with the premises and unique genius of our Constitution.").  Justice Breyer's concurring (and controlling) opinion in *Nicastro*, joined by Justice Alito, requires that in stream-of-commerce-type cases, there be not only a "regular flow" of a defendant's products into the forum state, but an additional element of forum-specific targeting "such as special state-related design, advertising, advice, marketing, or [some]thing else" to prove purposeful direction. *See id.* at 2792 (Breyer, J., concurring).  No such additional elements have been shown here, even assuming a regular flow of Beckhoff Germany's product(s) into Nevada could be

1  shown.  Directing advertising at the United States generally, but not specifically at the state

2  forum, is not enough. *See id.* at 2790 (plurality opinion).

3       Plaintiff responds that Beckhoff Germany exported the XTS system into the United Sates

4  for the express purpose of permitting Beckhoff to display it at the 2013 PACK Expo in Las

5  Vegas.  If this were true, there would be specific jurisdiction over Beckhoff Germany in the

6  present case.  Mr. Gerd Hoppe, a "corporate manager" for Beckhoff Germany, and the likely

7  "person most knowledgeable" that Beckhoff Germany would provide in any jurisdictional

8  discovery, attests that the only connection between the two Defendant companies is that Mr.

9  Hans Beckhoff owns 85% of Beckhoff Germany and 100% of Beckhoff, but that there is no

10 corporate relationship between them apart from a distribution contract. (*See* Hoppe Decl. ¶¶ 4–7,

11 Oct. 14, 2013, ECF No. 51-1).  He attests that Beckhoff Germany's only advertising available in

12 Nevada is on its website, which is available in equal degree throughout the United States and is

13 not directed towards Nevada in particular. (*See id.* ¶ 15).  Most importantly, he attests that

14 Beckhoff Germany has never shipped any XTS system or component thereof to Nevada. (*See id.*

15 ¶ 18).

16      Still, as the magistrate judge noted in refusing to stay discovery, Rule 4(k)(2) provides for

17 personal jurisdiction over a foreign defendant in a federal-question case where the defendant is

18 not amenable to personal jurisdiction in any state's courts, and where due process is satisfied. *See*

19 Fed. R. Civ. P. 4(k)(2).  The minimum contacts analysis in such a case applies to contacts with

20 the United States, not with the particular state in which the suit is brought:

21    Before the adoption of Rule 4(k)(2), a non-resident defendant who did not have
      "minimum contacts" with any individual state sufficient to support exercise of
22    jurisdiction, but did have sufficient contacts with the United States as a whole, could
      escape jurisdiction in all fifty states.  Rule 4(k)(2) was adopted to ensure that federal
23    claims will have a U.S. forum if sufficient national contacts exist.

24 *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).  Mr. Hoppe's

25 declaration focuses mainly upon contacts with Nevada and whether Beckhoff Germany shipped

any XTS system to Nevada.  But there would be specific personal jurisdiction over Beckhoff Germany in the present case if it shipped an XTS system to the United States that was then further sent to Nevada, and out of which the present controversy arises.  Under those circumstances, Rule 4(k)(2) would be satisfied, because there would be minimum contacts with the United States, even if not with Nevada or any other state, and the present federal-question case would have arisen out of those contacts, i.e., the shipment of the disputed XTS system to the United States.  This is what Rockwell appears to argue happened.  Rockwell should have the opportunity to discover if this is true.  The Court cannot say whether there is personal jurisdiction over Beckhoff Germany at this time, because the full scope of Beckhoff Germany's XTS system-related contacts with the United States as a whole are not clear.  The Court is less confident that there is personal jurisdiction than the magistrate judge, but Plaintiff must be given a greater opportunity to establish evidence of minimum contacts.

   The Court will therefore deny the motion to dismiss without prejudice at this time and will also overrule the magistrate judge in part.  The Court will stay general discovery as against Beckhoff Germany, but Plaintiff may proceed with jurisdictional discovery against Beckhoff Germany for sixty (60) days from the entry of this Order into the electronic docket, after which Beckhoff Germany may renew its motion to dismiss for lack of personal jurisdicton.  Plaintiff may employ all available discovery tools, but the requests must be directed to discovering admissible evidence relevant to Beckhoff Germany's contacts with the United States out of which the present case may arise.  There appears to be no question that there is no general personal jurisdiction over Beckhoff Germany in the United States or Nevada.  There is only potentially specific personal jurisdiction.  So jurisdictional discovery should not be directed to any and all contacts of Beckhoff Germany with the United States but only those contacts out of which the present controversy might arise, i.e., contacts related to the accused product, the XTS system.  Any discovery as against Beckhoff Automation, LLC remains unaffected by this Order.

**2.    Transfer**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  A motion to transfer under § 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors." *Id.*  In this Circuit, the factors to consider include:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

The Court denies the motion to transfer.  The parties' contacts with the forum are few, but the Court gives the Plaintiff's choice of forum great weight, and finds that the factors potentially mitigating in favor of transfer do not outweigh this consideration coupled with the fact that the infringing activity is alleged to have occurred in Nevada.  Unlike in *ESCO Corp. v. Cashman Equip. Co.*, No. 2:12-cv-1545, 2013 WL 4710258 (D. Nev. Aug. 30, 2013) (Jones, C.J.), the alleged infringement in this case was centered in this state.  Although Plaintiff here also alleges that the infringement takes place or will take place throughout the United States, unlike in *Esco Corp.*, where the plaintiff based jurisdiction in Nevada upon the presence of a retail outlet in this state (as in every other state), here, the alleged infringing activity was based upon a trade show in this state where Beckhoff was expected to unveil its accused product.  That trade show was

1  presumably critical to the introduction of the accused product to customers who would then
2  potentially purchase the product for use elsewhere.  The selection of this forum is therefore far
3  less arbitrary than it was in *ESCO Corp.*  Also, in *ESCO Corp.* the Court noted that "the fact that
4  mining is of special interest to the state of Nevada is unimportant in the context of the present
5  case, as the act of mining has an extremely attenuated relation to the present patent infringement
6  action." *Id.* at *3.  Here, Nevada's special role as a national and international center for trade
7  shows is relevant to the alleged infringement, i.e., the offering for sale at such a show of an
8  accused product.  And here, Las Vegas is a major air traffic hub, and it will not be meaningfully
9  more inconvenient for any witnesses from New York or Kentucky to travel to Nevada than to
10 Minnesota.

         **B.**      **The Invalidity Counterclaim and Affirmative Defense**

12 Defendants' statement that "[t]he asserted claims of the patents in suit are invalid for
13 failing to comply with the requirements of the patent laws of the United States, 35 U.S.C. § 1 et
14 seq., including, but not limited to, §§ 101, 102, 103, and/or 112" is indeed conclusory. (*See*
15 Countercl. 7:1–3, Sept. 27, 2013, ECF No. 42).  And in its third affirmative defense, Defendants
16 have stated, "Some or all of the claims of all patents in suit are invalid under one or more
17 provisions of the Patent Act, including 35 U.S.C. §§ 101, 102, 103, and/or 112." (*See* Answer
18 5:9–10, Sept. 27, 2013, ECF No. 42).  This affirmative defense would probably be sufficient with
19 respect to § 101 (utility) and § 103 (non-obviousness) of the Patent Act if it were pled in the
20 conjunctive (so that Plaintiff was on fair notice that it had to prepare to meet each of these
21 defenses and would not waste its time preparing to meet some defenses that Defendants do not in
22 fact intend to assert), but it is pled in the "and/or," and even if pled purely in the conjunctive it
23 would not be sufficient with respect to § 102 (novelty)  or § 112 (written description,
24 enablement, best mode, definiteness, and form of claims), which each contain several distinct
25 theories of invalidity.  Plaintiff is therefore not on notice which of these legal theories

1  Defendants truly intend to invoke.

2  Although the counterclaim and affirmative defense for invalidity do not comport with
3  Rules 8(a) and 8(c), respectively, the Court will not dismiss or strike them.  In this District, Local
4  Rules 16.1-6 through 16.1-9 obviate these pleading requirements in patent infringement cases.
5  Defendants will via these local rules receive very detailed notice of all claims alleged to have
6  been infringed, and Plaintiff will receive equally detailed notice of all contentions of invalidity,
7  claim-by-claim.  These rules essentially serve as an automatic requirement for both parties in a
8  patent infringement action to make a more definite statement such that the notice concerns
9  underlying Rules 8(a) and 8(c) are necessarily alleviated.  To the extent the Court has previously
10  held infringement defendants to stricter pleading standards as to counterclaims and affirmative
11  defenses in the past, it now reconsiders, although the Court would probably retain its previous
12  reasoning in the absence of Local Rules 16.1 *et seq.*

### C. Preliminary Injunction

14  At the hearing, the parties indicated that they had stipulated to an injunction for the time
15  being.  The present motion would therefore appear to be moot.  The Court will therefore deny it
16  as moot, without prejudice.  Plaintiff may bring the motion again if necessary.

17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Leave to File Excess Pages (ECF No. 29) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss for Lack of Personal Jurisdiction and to Transfer Venue (ECF No. 51) is DENIED, without prejudice as to the personal jurisdiction issue.

IT IS FURTHER ORDERED that the Motion to Reconsider the Magistrate Judge's Order (ECF No. 94) is GRANTED IN PART, and discovery is STAYED as against Beckhoff Automation GmbH (but not as against Beckhoff Automation, LLC), except that Plaintiff may conduct jurisdictional discovery against Beckhoff Automation GmbH for sixty (60) days form the entry of this Order into the electronic docket.

IT IS FURTHER ORDERED that the Motion to Strike Affirmative Defense for Invalidity (ECF No. 53) and the Motion to Dismiss Counterclaim for Invalidity (ECF No. 54) are DENIED.

IT IS FURTHER ORDERED that the Motion for Preliminary Injunction (ECF No. 8) is DENIED as moot, without prejudice.

IT IS SO ORDERED.

Dated: May 30, 2014

_____
ROBERT C. JONES
United States District Judge