```
 1                    UNITED STATES DISTRICT COURT
                           DISTRICT OF NEVADA
 2           BEFORE THE HONORABLE ROBERT C. JONES, DISTRICT JUDGE
                             ---o0o---
 3

 4    ROCKWELL AUTOMATION, INC.,       :
                                       :
 5              Plaintiff,             :   No. 2:13-CV-1616-RCJ-NJK
                                       :
 6         -vs-                        :   May 12, 2014
                                       :
 7    BECKHOFF AUTOMATION LLC and      :   Las Vegas, Nevada
      BECKHOFF AUTOMATION GmbH,        :
 8                                     :
                Defendants.            :
 9    _____

10

11                  TRANSCRIPT OF MOTION HEARING

12

13    APPEARANCES:

14    FOR THE PLAINTIFF:       AARON S. FOLDENAUER and
                               PAUL J. TANCK
15                             Attorneys at Law
                               New York, New York
16

17                             JONATHAN W. FOUNTAIN
                               Attorney at Law
18                             Las Vegas, Nevada

19    FOR THE DEFENDANTS:      PETER M. LANCASTER
                               Attorney at Law
20                             Minneapolis, Minnesota

21                             CHAD R. FEARS
                               Attorney at Law
22                             Las Vegas, Nevada

23    Reported by:            Margaret E. Griener, CCR #3, FCRR
                               Official Reporter
24                             400 South Virginia Street
                               Reno, Nevada 89501
25                             (775)329-9980
```

```
 1              RENO, NEVADA, WEDNESDAY, MAY 28, 2014, 10:00 A.M.

 2                            ---o0o---

 3

 4              THE COURT:  Thank you, please be seated.

 5          Let's see.  This was in Rockwell versus Beckhoff.

 6   Let's start with appearances here in the courtroom please.

 7              MR. TANCK:  Your Honor, my name is Paul Tanck

 8   with the firm of Chadbourne & Parke on behalf of the

 9   plaintiff, Rockwell Automation.

10              MR. FOLDENAUER:  Aaron Foldenauer also with

11   Chadbourne & Parke on behalf of Rockwell Automation.

12              MR. FOUNTAIN:  And Jonathan Fountain from Lewis,

13   Rocca, Rothgerber also on behalf of Rockwell Automation.

14              THE COURT:  Thank you.  Please.

15              MR. FEARS:  Your Honor, Chad Fears from Snell &

16   Wilmer on behalf of defendants, and I have Peter Lancaster

17   here from Dorsey & Whitney also on behalf of defendants.

18              THE COURT:  Okay.  Thank you.  We don't have

19   anybody on the phone, correct?

20              THE CLERK:  No, sir.

21              THE COURT:  All right.  We have several motions,

22   of course, to file excess pages that I'll grant.

23          I don't think -- I want to hear your comments, but I

24   have difficulty in striking the affirmative defenses.  I may

25   well require a little more clarification on those defenses.  I
```

1    don't think they're complete enough under the *Twombly*

2    standard.

3              For example, as we'll get into when we discuss it, I

4    don't think you're delineating sufficient to defend against

5    invalidity or obviousness charges by citing specific sections

6    or subsections of those statutes so the plaintiffs know what

7    you're talking about when you're talking about those

8    allegations.  We'll get to that briefly.

9              We also have a motion for preliminary injunction, of

10   course, and you do have to overcome those burdens that are

11   required, and several other motions as well.

12             So I'll let you proceed.  Why don't you present your

13   motion for preliminary injunction, and then in response, of

14   course, the motions to dismiss or -- as well, you will need to

15   present the requests for greater clarification.

16             MR. TANCK:  Your Honor, so prior to the hearing

17   the parties had discussed which of these motions should be

18   argued today and which motions are -- not necessarily need to

19   be argued today, and I think the parties agreed that the only

20   two motions that need to be argued today are the -- Beckhoff's

21   -- the defendants' motion to dismiss based on personal

22   jurisdiction and/or to transfer, which is docket number 51.

23             And the second motion to be argued today if

24   necessary would be docket 94 which is defendants' motion

25   for -- objection to the magistrate's denial of the motion to

1   stay.

2            The remaining motions that are before your Honor we

3   agreed would not be argued today because, for example, the

4   preliminary injunction motion that previously had been

5   brought, the parties had stipulated under docket number 52

6   onto an injunction that would be in place until the parties

7   renewed that application for a preliminary injunction so

8   therefore that does not need to be argued today.

9            And, likewise, the motions for excess pages would

10  not be argued today, and I think your Honor already ordered

11  how your Honor is going to order on that.

12           The other two motions, the motion -- plaintiff's

13  motion to strike, we weren't going to argue -- on the

14  affirmative defenses, we're not going to argue today, and,

15  likewise, our -- that's to strike the affirmative defense

16  and/or to strike the counterclaim.

17           So really I think what we're here today to argue in

18  front of your Honor is the two motions on the motion to

19  transfer, dismiss on jurisdiction and/or the motion for

20  objection.

21                THE COURT:  Thank you.  And without argument, I

22  may well resolve the other motions except the motion for

23  preliminary injunction.

24           You're telling me what regarding preliminary

25  injunction?  You have a stipulation?  For how long?

1          MR. TANCK:  Until the parties -- so docket

2   number 52, the parties are stipulating as to an injunction

3   that would be in place, and there's a procedure in that

4   stipulation that sets forth, if the defendants want to be

5   released under that injunction, there's a briefing schedule

6   and such and so forth upon which that could be reargued and

7   determined whether it should be lifted or not.

8          So I don't have the dates in front of me, but I

9   believe it's a -- sort of a nine-week briefing period, three

10  weeks, three weeks, three weeks.

11          THE COURT:  Maybe we better do that because my

12  inclination here was to deny the preliminary injunction.  So

13  maybe we better do that.

14          Let's go to your briefing on that preliminary

15  injunction, on that issue, on that motion only, and we'll --

16  per your stipulation, we'll leave the injunction in place

17  until that happens.

18          MR. TANCK:  Right.

19          THE COURT:  And then I'll rule on it.

20          All right.  The motions you want to comment on?

21          MR. LANCASTER:  Sure.  So the motion to dismiss

22  or to transfer, and then the motion to stay -- might I

23  approach the podium?

24          THE COURT:  Would you, please.

25          MR. LANCASTER:  And just a word on the

1    preliminary injunction motion.  I mean, the parties are in

2    agreement on that issue, that there is no need to brief or

3    argue it and -- not just now, but until circumstances out in

4    the world change.

5              And I'll tell you what led the defendants to agree

6    to that.  No -- not one of the machines at issue here, the XTS

7    machine, has ever been sold in the United States.

8              The Court did offer the ability to show the machine,

9    and then we were going to return on the selling machine for

10   the preliminary injunction motion.

11             The client is very conservative, your Honor.  They

12   wanted to make sure that during the pendency of this case

13   there could be no plausible claim for damages, and so they

14   don't plan to sell any of these in the United States until

15   this case is resolved.

16             THE COURT:  Okay.

17             MR. LANCASTER:  So let me turn first, your

18   Honor, to the motion to dismiss or transfer.

19             So there's really three motions, motion to dismiss

20   the German company, GmbH, a motion to transfer the entire

21   case, whatever part of it remains, and then, third, a motion

22   to stay discovery which is an appeal from a magistrate order

23   pending a decision on the first two.

24             So the decision on the first two could moot this

25   last one.  Obviously there wouldn't be anything to stay if the

1    Court resolves one way or the other these other motions, and

2    so, with the Court's permission, I would leave that issue to

3    the end and just deal with the first two which I think

4    probably do need to be resolved.

5                I would say as to the first two, though, motion to

6    dismiss GmbH, motion to transfer the whole case, if the Court

7    deemed it appropriate, it would be possible to transfer the

8    entire case and have a Minnesota court resolve the motion to

9    dismiss, but I'm sure the Court will have its own views on

10   that issue.

11               THE COURT:  I'm disinclined to do that.

12               You have a stronger -- the reasons I'll give you

13   will be laid out in the order, but you do have a stronger

14   issue relative to jurisdiction.

15               I don't see that they've established the basis for

16   personal jurisdiction yet, but I'm sure that I'm required to

17   give them additional discovery time.  For example, with

18   respect to Beckhoff Germany, clearly, I don't think they've

19   established it yet.

20               But simply by virtue of a common website, for

21   example, or some affiliation, not parent-child, of course, but

22   some affiliation, I don't think that's enough.  But clearly I

23   have to give them jurisdiction.

24               With regard to Beckhoff itself, it's a gray area.

25   So I'll let you comment on those.  But, of course, assuming

8

1    that I agree with you, I think the resolution is that I have

2    to allow discovery to continue for at least jurisdiction

3    purposes.

4                MR. LANCASTER:  All right.  Let me speak to that

5    issue.

6            And I'm going to refer to the defendants, if it's

7    all right, by the shorthand here, LLC, the U.S. company, or

8    GmbH or the German company.

9                THE COURT:  One more background point is the

10   only imposition into the United States -- and you know there's

11   a difference between jurisdiction as opposed to somebody in

12   the United States as opposed to jurisdiction *in personam* over

13   them in some particular state.

14           The only imposition that we're really talking about

15   here when we're talking about special -- special personal

16   jurisdiction -- general jurisdiction might be pretty tough for

17   them to establish, but for special, we have to have an

18   imposition into either a forum state or into the United States

19   and illegal conduct, or proscribed conduct arising from that

20   imposition, and, of course, third factor, fairness generally

21   for taking *in personam* jurisdiction.

22           The only imposition that we're talking about in this

23   case is the Las Vegas show.  And showing the item, you can't

24   claim jurisdiction over a website broadcast worldwide that

25   shows products, but if it's aimed particularly at the state of

1    Nevada or somewhere else, then, of course, you may.

2              Here the main problem is that the imposition, if at

3    all, was into a show, a tradeshow in Las Vegas.

4              So it seems to me that there's no need to transfer

5    it to any other venue.  This is the imposition here in this

6    district.  But I'm not sure how that gets *in personam*

7    jurisdiction over Beckhoff Germany.

8              Go ahead.

9              MR. LANCASTER:  So let me speak first to the

10   show, your Honor.

11             At the time we appeared before the Court, no

12   infringing act had occurred in Nevada.

13             There were plans to show the machine in Las Vegas.

14   It did not happen, your Honor.  The machine was never shown.

15   It was never used, it was never made, no infringing act ever

16   occurred in Nevada.

17             THE COURT:  But the patent statute is a little

18   broader than that, isn't it?  What is it, what are the words,

19   sell, market --

20             MR. LANCASTER:  Sell, offer to sell, make, use,

21   not in quite that order.

22             THE COURT:  Right.

23             MR. LANCASTER:  So --

24             THE COURT:  So an omnibus sell, doesn't that

25   include arrangements to allow sales, especially at a

1    tradeshow?  Don't they have a right to -- do they have to wait

2    until you actually set up your trade booth before they can

3    file a lawsuit?

4                  MR. LANCASTER:  Your Honor, what we are looking

5    at is either today or at the time, and at neither time was

6    there any offer to sell ever in Las Vegas or anyplace else in

7    Nevada, and I don't think there's any case which has denied

8    transfer where there are no contacts in the end with Nevada.

9            So neither party is here, neither party has relevant

10   employees here, neither party -- certainly the defendants

11   don't have property here, no witnesses here.  There is nothing

12   here including no -- everything you go through on the patent

13   statute, sell, offer to sell, make, use, none of those things

14   ever happened in Nevada.

15           And this, I think, your Honor, I could not find, and

16   the plaintiff could not find, any reported case anywhere where

17   there is no infringement and none of those other things and a

18   case stayed in a jurisdiction that is inconvenient for all

19   parties even including Rockwell.

20           And I -- one of the points that Rockwell made early

21   on in the case was, well, it won't be an inconvenience for

22   Beckhoff Germany because Beckhoff Germany would only have to

23   come to Nevada once for trial.

24           Well, that's already been proved wrong twice, your

25   Honor.  They came from Germany for the TRO hearing, and we've

1    been ordered to appear for a settlement conference in two

2    weeks.  The case is hardly half over, and that kind of

3    inconvenience already shows up, your Honor.

4           So I appreciate that lawyers' convenience doesn't

5    count for all that much in these debates, but appearing before

6    the Court -- and we're glad to have this opportunity,

7    depending upon how flights work, this is a three-day -- this

8    hour hearing or whatever it will be, your Honor, is a

9    three-day exercise for counsel.  I assume it's a three-day

10   exercise for Rockwell's counsel.

11          Obviously I have skilled and highly competent Nevada

12   counsel, but both parties made the judgment early on that to

13   immerse Nevada counsel in technology that other lawyers

14   already had some familiarity with, particularly, at least on

15   our side, with the expectation the case would be transferred

16   to a forum that was more convenient, that didn't happen, and

17   so real world practically, it is extreme inconvenience for all

18   parties, and, again, the unique factor, no infringing act.

19          So I -- I do hope that the Court will consider those

20   issues.  But, as I say, we could not find any case anywhere --

21   obviously there are cases where parties are going to show

22   something in the Nevada show, but a case where nothing ever

23   happened and zero, absolutely zero other contacts with Nevada

24   existed.  We couldn't find any case.

25          This Court decided a case just a year or so ago

1    where it transferred a case in August 2013, and the Court

2    referred to the judicial emergency in this district, and I

3    understand that perhaps that's been alleviated somewhat, but I

4    very much -- I don't want to get in trouble with the judges in

5    Minnesota, your Honor, but I don't think that the judges here

6    have the burdens that this Court has.

7            We're up to pleading 122 --

8            THE COURT:  We don't have that burden any more.

9    We have a full complement of judges, one judge is under

10   consideration for final appointment --

11           MR. LANCASTER:  Good.

12           THE COURT:  But otherwise we have filled all of

13   the vacancies.

14           MR. LANCASTER:  Good.

15           So let me say a few things about the jurisdictional

16   motion if I could, and, your Honor, feel free to hurry me

17   along if what I'm saying seems obvious to you because I

18   appreciate that you're starting in what seems to us to be the

19   right place.  Let me speak to the discovery issue, though.

20           The courts, I think, uniformly hold that when there

21   are disputed facts, a party defending against a motion like

22   ours is entitled to discovery.  But, your Honor, there are no

23   disputed facts here.

24           There's no pleading that refers to any particular

25   aspect of jurisdiction.  From the complaint you don't know

1    whether it's specific jurisdiction, general jurisdiction.

2    They've since conceded no general decision.

3            There's no distinction between the German company

4    and the U.S. company.  There's no reference to Rule 4(k)(2)

5    which I think perhaps the Court was referencing early on, the

6    provision for potentially nationwide consideration of

7    contacts.

8            Nothing that could set a factual dispute was in the

9    pleading.  One party, and only one party, submitted factual

10   material in connection with that motion.  That party was

11   Beckhoff.  Rockwell didn't submit anything.  All the evidence

12   we're talking about is before the Court.

13           We are now more than eight months past the filing

14   date.  Massive amounts of discovery have been undertaken by

15   Rockwell.  Dozens upon dozens of interrogatories and document

16   requests -- we're well over a hundred by now.  Not one that

17   I've seen relates to these jurisdictional issues.

18           If Rockwell thought that it needed jurisdictional

19   discovery, it had eight months and dozens of requests to seek

20   it.

21           We would submit, your Honor, that a party deserves

22   an opportunity to take discovery when there's disputed issues,

23   but when there's no disputed issues, and when it's had eight

24   months of opportunity, that opportunity doesn't go on forever,

25   particularly when, on the side, is working as hard as it can

1    to extract information from a party that we believe has due

2    process rights that are being infringed.

3           So certainly other discovery should not be going on

4    while that consideration occurs, and, your Honor, as I say,

5    the cases say that -- also say that when there is no disputed

6    fact, there is no need for discovery.

7           But let me turn if I could, your Honor, to a little

8    bit of the merits because there are two basic distinctions

9    here that Rockwell's entire briefing does its best to blur.

10          One is what you would think would be the very simple

11   distinction we've already talked about, the distinction

12   between the U.S. LLC and the German GmbH, and this fact has

13   been stated about a dozen times in our papers now, but we

14   still have difficulty persuading Rockwell from not lumping

15   them together for the jurisdictional argument.

16          We are not making a motion to dismiss for the LLC,

17   only for the German company, and the strongest authority for

18   that distinction is the Supreme Court case, the *McIntyre* case

19   that we cite from 2011 where that case held, on facts much

20   better for the plaintiff, and facts that are not going to

21   change through discovery, much better for the plaintiff than

22   any facts that Rockwell has, that, as a constitutional matter,

23   there was no jurisdiction.

24          In that case, a plaintiff had been injured by a

25   machine.  The equivalent of patent infringement had occurred

1    there; doesn't exist in this case.

2              There it was a distribution contract with another

3    party for distribution of the foreign company's products

4    throughout the United States.  That's the same as here.

5              In that case, the defendant, the foreign defendant,

6    had attended multiple tradeshows relating to the product at

7    issue.  That has not happened here, your Honor.

8              And in that case the Court found that up to four

9    machines had been sold, sold, in the forum state, and the

10   Court found that the constitution prohibited jurisdiction over

11   that foreign defendant, and, again, your Honor, that plaintiff

12   had a much stronger case than Rockwell has.

13             Now, Rockwell never comes to grips with that case.

14   Instead, they simply say, oh, well, the stream of commerce

15   theory got rejected in that case, and that's true, it did, but

16   the reason that plaintiffs try to argue -- base arguments on

17   the stream of commerce theory is that without it they have no

18   plausible jurisdictional argument anyway.

19             That's the last -- was the last resort for a

20   plaintiff who had no basis for jurisdiction.  That last resort

21   is gone.

22             And the Court didn't just say -- the Supreme Court

23   didn't just say, well, we're rejecting the stream of commerce

24   theory, this is how it closed its opinion.

25             "New Jersey is without power to adjudge the

1          rights and liabilities of *J. McIntyre*, and its

2          exercise of jurisdiction would violate due process."

3               That case we believe, your Honor, controls this case

4     except for one issue, the 4(k)(2) issue, which I'll turn to in

5     a moment.

6               If the Court would grant me the indulgence of doing

7     a peculiar thing, I would like to point to Rockwell's best

8     pieces of evidence, the evidence that they cite over and over

9     again, to say that the German company should be subject to

10    jurisdiction.

11              And, again, the two distinctions that Rockwell

12    ignores repeatedly, the distinction between the LLC and the

13    GmbH, and the distinction between general jurisdiction and

14    specific jurisdiction, Rockwell's burden is to show a

15    connection between GmbH and the XTS in the United States.

16              So I would like to show you what they have in that

17    regard; three documents.  Again, all of these documents

18    provided by defendants.  Rockwell didn't provide anything that

19    might create a fact issue, and, with the Court's permission,

20    I've put these three documents on the ELMO.

21              So what I have put in front of the Court here is

22    Exhibit C, which happens to be Document 23-1, Exhibit C, which

23    is the marketing materials for the XTS, and these are the

24    kinds of materials that are available from the GmbH website.

25              You see a copyright notice for GmbH.  This specific

1    example did not come off the website, but, as I say, pretty

2    similar, maybe identical materials are on the website.

3          These are materials that are used by the LLC.  The

4    undisputed evidence is that the LLC runs the operations in the

5    United States.  The undisputed evidence is that it was the LLC

6    who was planning to show the XTS in Las Vegas.

7          This cannot create jurisdiction over GmbH, your

8    Honor, any more than a website can, any more than if -- let's

9    go back to the *J. McIntyre* case.  The defendants' machines

10   ended up in New Jersey.  If that doesn't establish

11   jurisdiction, the fact that a document copyrighted by a

12   foreign company ends up in the United States cannot establish

13   jurisdiction.  If the machine itself doesn't, a document

14   mentioning the machine couldn't possibly do it.

15         That's one of Rockwell's three favorite exhibits.

16         Let me show you their number one favorite exhibit.

17   This, again, is not a document provided by Rockwell, a

18   document provided by Beckhoff.

19         Now, this is not a press release.  This is a news

20   posting by somebody else not affiliated with Beckhoff.  This

21   is pure hearsay if offered for the truth of the matter.  It's

22   not evidence at all.

23         But what this article is about is Beckhoff LLC in

24   Minnesota had an open house because it was moving to a new

25   building, and the language here that Rockwell points to is

1    language at the end of the article that is attributed to a

2    person named Gerd Hoppe.  This, by the way, is -- this is all

3    part of the same filing, 23-1.

4            And at this open house the XTS -- in Minnesota, the

5    XTS was shown, and there is a quote that is attributed to, so

6    far as I know, the sole person who has worked for both

7    companies, that's Gerd Hoppe who is cited there.

8            And so Gerd Hoppe, who actually came to Minnesota to

9    set up the U.S. company, Gerd Hoppe, naturally enough, went to

10   the open house, and he said a few words according to this

11   hearsay document, although I could imagine him saying this.

12   He said a few -- is quoted as saying a few words in this

13   hearsay document about the XTS.  That cannot itself establish

14   jurisdiction over the entire company in the United States.

15           One other document, your Honor.  That document is

16   cited -- and I call it out partly because it was mentioned by

17   the magistrate in one of her orders.  That document is cited

18   over and over again.

19           And then finally, and perhaps most important, the

20   document that announced the Las Vegas show.  This is another

21   document cited over and over again by Rockwell, again, your

22   Honor, submitted by Beckhoff, not Rockwell, advertising a

23   party that they're putting on at the PACK EXPO, what led us

24   here.

25           But the key point, your Honor, is this is not a GmbH

1   show, this is an LLC show, and this document makes clear that

2   that's what it is.  This document, which talks about the show

3   and the machine, is an LLC document.

4           I would ask, your Honor, that you apply the same

5   rule to both parties here.  There is no need to accept our

6   factual assertions if they're not backed up by a document.

7           A statement that a lawyer might make in a paper or

8   in a courtroom does not create a factual issue.  I've shown

9   those documents to the Court rather than just talk about them

10  so there wouldn't be any dispute about them.

11          Let me say a word about Rule 4(k)(2) which is the

12  sole difference between -- that could draw a line between the

13  *McIntyre* governing authority and this case, and in this case

14  it doesn't work, your Honor.

15          First, as I already mentioned, absolutely no

16  reference to Rule 4(k)(2) in the complaint.  When we filed our

17  motion, we had no idea they were going to rely on it.

18          The whole concept of the rule is inapplicable here,

19  your Honor, and the reason that it's inapplicable is that it

20  was set up to apply when there were contacts in lots of

21  different states but not enough in any one state to support

22  jurisdiction, and I'm not just making that up.  The notes to

23  the rule make that clear, the formal reported notes to the

24  rule.

25          In this case, there is no collection of contacts

1    relating to the XTS that goes beyond what the Court has

2    already seen.  There isn't any collection of contacts that

3    could support Rule 4(k)(2).

4           Now, it's probably not just accident, your Honor,

5    that since that rule was put in place in 1993, so far as we

6    know, and so far as Rockwell has been able to find as well,

7    not one single Ninth Circuit case has sustained jurisdiction

8    based upon 4(k)(2), and the notes to the rule provide some

9    indication of why that might be.

10          They quote a United States Supreme Court case that

11   says, quote,

12              "Great care and reserve should be exercised

13        when extending our notions of personal jurisdiction

14        into the international field."  Close quote.

15          The burden is even higher when you're talking about

16   a foreign company.  In 1996, the Ninth Circuit, in the *AT&T*

17   case that's cited in our papers, shortly after the rule came

18   out, made clear it's not enough to show a minimum contact

19   somewhere in the United States.

20          What that case said was, quote, "significant

21   nationwide contacts," close quote, must exist, but,

22   nonetheless, the company is not subject to jurisdiction in any

23   particular state; "significant nationwide contacts."

24          There is just no plausible basis, and no amount of

25   discovery is going to change that fact, your Honor, even if

1      over the last eight months Rockwell had taken upon itself to

2      do that.

3                      THE COURT:  Now, again, you're just simply

4      arguing relative to Beckhoff Germany, not the LLC.

5                      MR. LANCASTER:  Absolutely, your Honor.

6      Absolutely, your Honor.

7                      THE COURT:  All right.

8                      MR. LANCASTER:  And so let me talk for just a

9      second about the kind of fair and reasonableness issue.  The

10     Court referenced it.

11            In this case, Rockwell can get all the relief that

12     it needs from the LLC.  The undisputed evidence is that only

13     the LLC conducts U.S. operations.

14            The stipulation is in place.  It's not going to sell

15     machines, and there's not going to be any worry about a deep

16     pocket because there will be zero sales before this matter is

17     resolved.  For that reason, all the relief that Rockwell needs

18     is available from the LLC without violating the constitutional

19     rights of GmbH.

20            Let me mention, your Honor, that this is a case --

21     although, as I say, there's already been more than 120 filings

22     in it, this is a case that should be a small case that has

23     turned incredibly messy and complicated.

24            Here's why it should be a small case.

25            Every patent at issue in this case expires in 2018.

1         There are no damages because there's no sales.

2         We -- I imagine the Court could picture, perhaps at

3    the appellate level, a fight over this case extending into

4    2016.  By the time that's done, there will be two years left

5    on this patent, all of these five patents.

6         For all those issues, your Honor, the LLC gives

7    Rockwell all the relief that it needs.

8         One last point, your Honor.

9              THE COURT:  And what is that?

10             MR. LANCASTER:  Well, if it's right, an

11   injunction, an injunction lasting to 2018.

12             THE COURT:  So you're willing to stipulate to

13   that.

14             MR. LANCASTER:  What I'm willing to stipulate --

15             THE COURT:  Only after litigation.

16             MR. LANCASTER:  Well, that remains up in the

17   air.  But as we speak today, there is a stipulation, and what

18   I'm saying -- a stipulation that no sales will occur, and what

19   I'm saying is that will not change until this Court decides

20   that that's inappropriate either at a final trial or some

21   other mechanism --

22             THE COURT:  So I don't understand what you're

23   offering.  You just said they have all the relief they need.

24   What relief are you offering?

25             MR. LANCASTER:  What I'm saying, your Honor, is

1    that they gain nothing further by having GmbH in the case.  If

2    they want an injunction until 2018, having GmbH in the case

3    has no impact on that.  That's what I'm saying.

4              They get -- the presence of LLC -- of the LLC gives

5    them everything they could possibly need, whether it's

6    litigated or not, your Honor, because there's -- the GmbH is

7    not going to be making any sales in the United States.

8              THE COURT:  So I'm not requiring an answer right

9    now, but I will push you for a further answer because it may

10   obviate the necessity of going further in the entire case.

11             If the Court concludes that all I can retain

12   jurisdiction over is LLC, do you want to go to litigation on

13   that, or are you willing just to say LLC will not sell until

14   2018?

15             MR. LANCASTER:  You know, my personal answer on

16   that question may not yet be exactly the same as my client's

17   answer, and as I stand here today, I cannot give you a

18   definitive answer.

19             THE COURT:  I'm just throwing out the question,

20   that's all.

21             MR. LANCASTER:  I happen to have a very strong

22   opinion on the topic myself.  I don't like charging my client

23   $2 million, or whatever it's going to be, for nothing.

24             THE COURT:  Right.

25             MR. LANCASTER:  And so that is an issue that we

1    are discussing, but I cannot tell you that it's resolved, your

2    Honor.

3                    THE COURT:  Okay.  So I've posed the question,

4    and I'll just ask you at some point.

5                    MR. LANCASTER:  Let me just make one last point

6    about the presence and the lack of need for GmbH.

7            If what is important to Rockwell is having some

8    lawsuit against GmbH, it has already done that.  It sought a

9    TRO against GmbH in Germany.  There was no argument about lack

10   of jurisdiction.  The parties briefed that extensively.

11           For reasons that perhaps Mr. Tanck can explain, that

12   case was dropped without GmbH providing anything, unilaterally

13   by Rockwell, but that's where litigation involving GmbH should

14   occur, where Rockwell started and, for its own reasons,

15   stopped a lawsuit.  It doesn't need to be present here.

16           So, your Honor, subject to further questions that

17   the Court has, that's all that I have now.

18           I would ask yet again that when the Court listens to

19   Rockwell and hears about this contact, supposed contact, and

20   that contact, the Court consider what evidence actually lies

21   beyond it and behind it, and this basic pair of distinctions

22   that this entire motion rests on, one, LLC versus German GmbH,

23   and general jurisdiction versus specific jurisdiction that has

24   to be tied to the XTS.

25                    THE COURT:  Thank you.

1        MR. TANCK:  Thank you, your Honor.  Again, this

2   is Paul Tanck on behalf of Rockwell.

3        Mr. Lancaster made a number of points.  I'm going to

4   try to address them in no particular order just as I've

5   written them down.

6        I think the most stunning thing that Mr. Lancaster

7   said was that Beckhoff has committed no infringement in

8   Nevada, and he cited the patent statute, and every time he

9   said that the defendants haven't committed an --

10       THE COURT:  Beckhoff LLC?

11       MR. TANCK:  Beckhoff LLC or Beckhoff GmbH.

12       Importing an XTS system, accused infringing system,

13  into the District of Nevada is an infringement under the

14  patent statute.

15       And, in fact, we know that that machine was here in

16  Nevada.  If your Honor recalls, back eight months ago when we

17  were here we asked your Honor that the machine that was

18  sitting in Nevada at the time be kept in the United States and

19  that that machine be available for inspection sometime down

20  the road.  So that machine was brought into Nevada, and that

21  is an infringement under the patent statute.

22       Importantly, that machine, that XTS machine, isn't

23  designed, developed, manufactured by LLC, the U.S. entity,

24  it's designed, developed and manufactured by the German

25  entity.

1          And the -- let me tell you some other things that I

2     think Mr. Lancaster got wrong.  This -- well, let me take a

3     step back.

4          The practical point here is why is GmbH fighting so

5     hard to get out of this case, and the reason why -- the

6     practical point of why they want to be out is because they

7     don't want the discovery to be had on the XTS system.

8          Again, GmbH, the German entity, is the entity that

9     designed, developed, manufactured and has all the documents

10    relating to how the system works.

11         They want to get out of the case so that we cannot

12    get discovery, so we cannot get to the merits of whether the

13    XTS system actually infringes Rockwell's patents.  That's the

14    practical point.

15         Now, whether that's the practical point or not, let

16    me tell you why there is jurisdiction over GmbH in the United

17    States.

18         We argued this already in front of the magistrate

19    judge, Judge Koppe, earlier in January on Beckhoff's motion to

20    stay discovery while pending these motions, and what we argued

21    to the magistrate judge, and what the magistrate judge found

22    was that under both 4(k)(1), which is specific jurisdiction,

23    there was contact sufficient that likely there would be

24    personal jurisdiction over GmbH in Nevada, and also, in the

25    alternative, under 4(k)(2), which is the federal long-arm

1    statute, there would also be jurisdiction over GmbH, the

2    German entity, in Nevada.

3            And the reason why -- and let me first go to the

4    4(k)(2) point.  Under 4(k)(2) there's three elements to show

5    jurisdiction under the federal long-arm statute.  The first

6    element is, is this a federal question, and here it's

7    undisputed, this is a patent case, and that element is met.

8    It's a federal question.

9            The second element is whether or not the defendant

10   is not subject to jurisdiction in any court of general

11   jurisdiction.  At that hearing Mr. Lancaster stood up, and at

12   the direct questioning of Judge Koppe, he admitted that there

13   is no general jurisdiction over GmbH, the German entity, in

14   any state court.

15           She asked -- Judge Koppe asked Mr. Lancaster are

16   there any -- any 50 states where there would be jurisdiction,

17   and Mr. Lancaster said no.  So that element is met.

18           And, also, Judge Koppe in her order pointed out that

19   if a defendant contends he cannot be sued in a forum state, he

20   must then identify where suit is possible, and defendants

21   haven't -- GmbH hasn't identified another state in which this

22   case could have been brought.

23           So the final element under the federal long-arm

24   statute is whether or not the exercise of jurisdiction

25   comports with due process based on defendants' contacts with

1    the United States as a whole, and let me tell you about some

2    of those contacts.

3            And your Honor pointed out earlier that this was

4    a -- maybe a common website case, or, you know, an affiliation

5    case, but there's so many more contacts than that.

6            And I think, if you remember, if you recall back

7    eight months ago when we were here, the jurisdiction point was

8    argued by defendants at that point, and your Honor at that

9    point said, well, if GmbH ships this product into the United

10   States, then I'm going to have jurisdiction.

11           And, your Honor, GmbH, besides designing, developing

12   and manufacturing the XTS, directly shipped that XTS system

13   into the United States which was then transported to Nevada

14   which was here at the time of the hearing when we were here

15   eight months ago.

16           That contact is a specific jurisdictional contact.

17   Shipping into the United States is a violation of the patent

18   statute.

19           Secondly, this XTS system was displayed at various

20   tradeshows and at -- it was showcased at at least two places

21   in the United States, one at a PACK EXPO in 2012 which GmbH

22   employees attended, and then it was also displayed where

23   Mr. Lancaster put the article up on the board, on the ELMO, in

24   Minnesota at the -- at a -- at an event to showcase the XTS

25   system.  Again, GmbH was present at that showcasing.

1          So we have an importation, we have a use -- these

2     two different exhibits, those are both infringements under the

3     statute, and then we also have the vigorous promotion of the

4     XTS system.

5          GmbH produced -- creates marketing materials, they

6     create manuals, and they create also videos on the XTS system.

7     These were all brought into the United States and sent to

8     their U.S. sales team.

9          And this is all -- has been outlined in Judge

10    Koppe's order where she pointed out that in May 2012 Beckhoff

11    GmbH sent XTS system brochures to its U.S. sales team and its

12    videos to the U.S. sales team.  Beckhoff Automation GmbH's

13    corporate manager showcased the XTS system in Minnesota.

14         So this is not just a common website case.  This is

15    actually the GmbH entity designing, developing, manufacturing

16    and directly shipping in -- the unit to the United States to

17    be showcased where they were present, and by their

18    commonly-owned subsidiary, essentially, because that's how

19    they hold them out on the website.  If you look at the

20    website, they say we have the headquarters in Germany and our

21    subsidiaries in the U.S.

22         The *J. McIntyre* case that Mr. Lancaster cited to you

23    in order to distinguish this point on specific jurisdiction,

24    first of all said it is binding precedent on this Court.

25         Well, in fact, the *J. McIntyre* opinion was a

1   plurality opinion, and a plurality opinion is not binding law

2   on this Court, first of all.

3           But, more importantly, let's talk about what the

4   *J. McIntyre* case was about.  In that case, most importantly,

5   the court found that the distributor in the United States that

6   *J. McIntyre*, the foreign entity, was using was an

7   unaffiliated, independent distribution.  It was not a

8   commonly-owned, controlled, held out to be one worldwide

9   company, and that's a significant fact in the differences

10  between the facts in the *J. McIntyre* case and the facts here.

11          More importantly in the *J. McIntyre* case, as well,

12  that was a case involving products liability in New Jersey.

13  This is a patent case.  Under 4(k)(2), we're arguing

14  jurisdiction.  These elements were not argued and are not

15  dispositive -- I'm sorry, are not illuminated in the

16  *J. McIntyre* case.

17          So that case is not binding on this Court.  It

18  didn't involve a commonly-owned, related distributor, and it

19  didn't involve a patent infringement case and jurisdiction

20  under 4(k)(2).

21          Another point Mr. Lancaster made was that your Honor

22  should be compelled that the Ninth Circuit has never found

23  jurisdiction under 4(k)(2), and I found that somewhat odd that

24  Mr. Lancaster would argue Ninth Circuit cases when we're

25  arguing personal jurisdiction.

1           As your Honor knows, personal jurisdiction is

2    governed by federal circuit law in patent cases, not regional

3    circuit law.  So I think it would be hard pressed to find a

4    4(k)(2) case in any jurisdiction related to patents in

5    regional circuit law because all those cases are going to be

6    in the federal circuit under federal circuit personal

7    jurisdiction law.

8           And, in fact, we cited many cases in our briefing

9    where 4(k)(2) jurisdiction was held in a patent case, and I

10   give the one example of the *Synthes* case, S-y-n-t-h-e-s, which

11   found federal long-arm statute jurisdiction over a defendant,

12   a foreign defendant, with facts very similar to the ones in

13   this case.

14           Just a few more points.

15           Mr. Lancaster also argued that the only relief we're

16   seeking or that we can get in this case is an injunction.

17   While we are seeking an injunction, Mr. Lancaster is ignoring

18   the fact that price erosion damages, which have occurred

19   already in this case, and lost profits that have occurred in

20   this case, can also be sought, and we will be seeking those

21   damages.  So it's not just an injunction, we go away.

22           In fact, we're going to seek damages, monetary

23   damages, under price erosion and lost profits analysis.

24           And, for example, under price erosion, we offer our

25   product for $100,000.  Beckhoff offers their product for

1     $50,000.  Our customers find out, well, why are you selling

2     your product for $100,000 when they've offered for sale -- or

3     they've offered it for sale for $50,000.  I'm not going to buy

4     yours for $100,000.  Once you drop your price, I'll buy yours.

5              That sort of -- even without selling their product,

6     that sort of price erosion can happen and has happened.

7              And so this brings me to the next point, your Honor,

8     of why this case should be here.

9              Not only should this case be here because there's

10    jurisdiction over the parties and because we've been

11    litigating here, but, more importantly, it's Beckhoff's duty

12    or defendants' burden to show that there's a more convenient

13    venue, and they haven't done that.

14             They've cited the transfer elements, but they

15    haven't cited any witnesses, any sources of proof.  They just

16    say that there's sources of proof and there's witnesses

17    elsewhere, but they haven't identified those.

18             And if you look at our briefing, your Honor, they

19    have to meet that burden and specifically call out the

20    nonparty witnesses that can't travel to this venue, and they

21    have to specifically call out the sources of proof that can't

22    be brought to this venue, and that's their burden, and they

23    haven't met that.

24             And I think your Honor already appreciated that the

25    importation, the vigorous promotion, and events that occurred

```
 1    here is why we should be here.

 2              Now, I go back to the point also on the price

 3    erosion.  We have a number of orders in this case already,

 4    including your Honor's order to keep this XTS system in the

 5    United States so it can be inspected.

 6              And we have another order by your Honor that we

 7    stipulated to that the parties, Beckhoff LLC and Beckhoff

 8    GmbH, would not offer to sell, use the XTS systems in the

 9    United States.  But both of those orders have been violated,

10    admittedly, by defendants since your orders have been issued.

11              And I -- if I can hand up to your Honor two stacks

12    of paper here that detail the violations of these orders -- if

13    I may I approach.

14                   THE COURT:  No, thank you, but you may refer to

15    them.

16                   MR. TANCK:  Sure.  Okay.

17              So we have one instance where Beckhoff LLC, after

18    your Honor ordered and the parties stipulated they would not

19    offer to sell the system, Beckhoff LLC, one of their

20    employees, offered to sell -- offered a price quote to a

21    customer in violation of the order.  We're currently seeking

22    discovery on that issue.

23              But this is exactly what we were afraid of, that

24    Beckhoff is going to our customers and going to the market and

25    putting out price quotes for this allegedly infringing system
```

1    in order to drive the price of our product down, or it's

2    having the effect of driving our price down.

3             And so this is a violation of this order.  We're

4    seeking discovery on it, and once we get a full picture of

5    what's going on and the damage that has occurred, we're going

6    to raise those issues if necessary with the Court.

7             So it's another reason to be here because there's

8    orders of this Court that have already been ordered and have

9    been violated.

10            But the second one, your Honor, the one where it

11   has -- your Honor said to keep the XTS system in the United

12   States so it could be inspected, we have found out that in

13   transportation of the XTS system from Nevada to Minnesota

14   where they were moving the XTS system, the XTS system was

15   damaged and potentially inoperable.

16            So the very infringing thing that we need to inspect

17   that caused the harm is now damaged and may not be repairable.

18   So we asked the defendants, well, what's the situation, can

19   we --

20            And they said here's the deal, you can come to

21   Minnesota and inspect the damaged machine and, if it works,

22   great.  If it doesn't work, too bad, you don't get another

23   chance to inspect it, and we're not going to let you go to

24   Germany and inspect it there, and we're not going to bring

25   another one here.

1              The second option you have is you can go to

2    Germany -- you can forego seeing it in Minnesota, you can just

3    go to Germany on your own dime and see it there if you like.

4              Obviously, your Honor, they had an obligation to

5    keep the XTS system in the United States for inspection, and

6    they haven't lived up to that obligation.

7              And so once we get to the bottom of that situation,

8    and whether they violated that order, we're then going to

9    return to your Honor to get a resolution on how and when that

10   inspection should occur and under what circumstances, whether

11   they're going to have to pay for us to go to Germany, or

12   whether they're going to bring another one here to the United

13   States.

14             But my point being is these two orders are orders of

15   this Court.  This Court is very familiar with the issues.

16   There's no reason to start transferring this case to another

17   jurisdiction and starting all over, especially in the fact

18   that they haven't shown there's a compelling reason to have

19   this case anywhere else.

20             I want to also raise the jurisdiction discovery

21   point.  Mr. Lancaster stated that while there's been lots of

22   discovery in this case, we haven't sought jurisdictional

23   discovery, and we've waived our right to get jurisdictional

24   discovery.

25             Obviously your Honor's inclination at the beginning

```
1    was if jurisdiction couldn't be found, we would at least be

2    entitled to jurisdictional discovery, and the case law we

3    cited in our brief states as much, that it would be reversible

4    error not to give us discovery.

5              And, in fact, we -- from the very first briefing

6    when we responded to the motion to dismiss on jurisdiction, we

7    requested jurisdictional discovery.  It's right in our

8    briefing.

9              And the reason why we haven't pursued heavily

10   jurisdictional discovery in the meantime is because we

11   didn't -- we're not going to seek and spend money on

12   jurisdictional discovery when we may not need it.

13             So if your Honor thinks that there isn't sufficient

14   detail in the record, and if we haven't shown a prima facie

15   case of personal jurisdiction, which is all we have to show,

16   then we are entitled to jurisdictional discovery.  So I wanted

17   to make that point.

18             And the reason why there's been so many pleadings

19   and so much discovery and so much battle in this case is not

20   because of Rockwell, it's because the defendants at every turn

21   have been stonewalling discovery.

22             And if you just look back in the docket of how many

23   times we've been compelling discovery, getting orders,

24   reconsideration, objections to orders, and then just flat out

25   denying the discovery that we're trying to get, that is why
```

1    things are multiplying in this case.

2              And that is why -- the practical point, again, why

3    GmbH wants to be out of this case, because they don't want to

4    give us the discovery.

5              And they make arguments that, oh, you just want to

6    see our crown jewels, you want to get discovery because you

7    want to learn about our product, and your product is so

8    insufficient and not complete, and this is why you sued us

9    because you want to get the discovery.

10             And these are obviously arguments courts hear all

11   the time and quickly dismiss because there's a protective

12   order in place and that only the appropriate people see what

13   needs to be seen and attorneys' eyes designations and outside

14   attorneys' eyes designations.

15             The reason we're not getting the discovery is

16   because they don't want to give it to us because they know, if

17   they give it to us, we'll get the information we need to

18   continue on with the case.

19             So with those points, your Honor, I think -- I

20   think -- I just -- I think, again, if you look at the

21   briefing, I think it's very substantial, and I think it really

22   lays out the points very clearly.

23             And if you look at Magistrate Judge Koppe's order, I

24   think it lays out the jurisdictional arguments under 4(k)(1)

25   and 4(k)(2) very cleanly, and if -- if -- if -- again, if your

1   Honor, thinks we haven't made a prima facie showing, we would

2   be entitled to jurisdictional discovery.

3                   THE COURT:  Thank you.

4                   MR. TANCK:  Thank you, your Honor.

5                   THE COURT:  Anything else?

6                   MR. LANCASTER:  I do have just a few points,

7   your Honor.

8            As I think I predicted, the Court did not see one

9   piece of evidence that could support jurisdiction over GmbH.

10  It did not see any allegation that might support jurisdiction

11  over GmbH.

12           We did hear one supposed quote of the record that

13  counsel relies on, and that quote supposedly occurred in front

14  of Judge Koppe.

15           And what counsel said, as perhaps the Court recalls,

16  the representation was Judge Koppe asked me is there

17  jurisdiction anywhere over GmbH, and I answered no is the

18  representation.

19           This transcript, it's page 9 of the transcript.

20  That shows that the one time Rockwell purported to point to

21  the record it got it totally wrong.  That's why we're asking

22  the Court not to rely on counsel's statements.

23           In fact, question:

24                "Is it the position of GmbH that there's no

25       personal jurisdiction over GmbH in any of the

1       district courts in this country?

2               Answer, "There is no general jurisdiction

3       anywhere," a proposition Rockwell doesn't even

4       challenge.

5           I go on to say,

6               "Here's a hypothetical -- possible

7       hypothetical case in which there could be specific

8       jurisdiction.  This Minnesota company gets in a

9       contract dispute," that's LLC, "contract between the

10      two companies," there is a distribution agreement

11      just as there was in *J. McIntyre*, "and somehow that

12      gets litigated or started in Minnesota.

13              "Then a dispute where there's specific

14      contacts directly relating to that contact, perhaps

15      there could be specific jurisdiction in that case.

16      That's not this case, your Honor."

17          That, again, is why we think it's appropriate for

18  the Court to look at the actual record to see if there are any

19  disputed facts.  There are not, and there isn't any reason to

20  keep GmbH in the case.

21              Now, counsel indicated that the law is that if the

22  defendant doesn't identify a specific court where there is

23  jurisdiction, then 4(k)(2) comes into play.  But that's not

24  what the federal circuit -- what was identified as the

25  governing circuit says.

1          What the federal circuit says in the *Synthes* case

2     that was cited, and I'm reading from 1296 of that case, is

3     that,

4               "We leave for another day a determination as

5          to whether the plaintiff or defendant bears the

6          burden of fulfilling the second requirement of Rule

7          4(k)(2)," the issue that counsel was talking about.

8          That is not a settled issue as the federal circuit

9     has said.

10         Now, there's another extremely significant

11    representation that you heard, your Honor, this one purporting

12    to quote Section 271, the federal infringement statute, and

13    you heard the emphatic point being made that relates to

14    importation into Nevada.

15         Here's what the statute actually says over and over

16    again.  It says it in 271(a), 271(c), 271(e), 271(g), imports

17    into the United States.

18         Your Honor, it's never -- I've never heard that

19    argument being raised before so I haven't done any exhaustive

20    research, but that statute was grossly misquoted, your Honor,

21    and the point -- as I say, that importation from one --

22    movement from one state to another, which incidentally was not

23    by GmbH but by LLC, is -- what is triggered by that is not

24    consistent with statutory language.

25         Now, I always hesitate to haul out a cliche as

1    burdened down as this one is, but, your Honor, the story about

2    the boy who murders his parents and then pleads for mercy

3    because he's an orphan applies here.

4              Rockwell says the case should stay here because this

5    Court has listened to this argument and an hour or two of

6    argument before, because we have made 120 plus filings.

7    That's backwards, your Honor.  No party whose constitutional

8    rights are being violated should be asked to file 120

9    pleadings in a court.

10             Your Honor, within the next couple of weeks there

11   will be argument over what was referred to accurately as the

12   crown jewels of GmbH, its source code.

13             If this Court were to delay its ruling but permit

14   discovery to continue, some of the very rights that the

15   constitution is meant to protect would be abrogated.

16             That -- Rockwell says, well, we want GmbH in the

17   case so that we can get discovery from it.  That's what the

18   due process clause is intended to prevent.

19             They've already had massive discovery from it in

20   violation of GmbH's rights.  They should not have more, your

21   Honor, and for that reason we ask first for an expeditious

22   resolution of these two issues, but certainly that discovery

23   that Rockwell is pushing as fast as it can not continue while

24   this issue hangs over the Court and this case.

25             So, again, subject to -- I can speak to those

1  particular examples of supposed violations of the orders if

2  the Court deems that relevant.

3            THE COURT:  Thank you so much.

4            MR. TANCK:  Your Honor, if I just may make one

5  response?  I just feel --

6            THE COURT:  No.

7            MR. TANCK:  -- that I was attacked on quoting

8  the record, and I have the record right here.  I would really

9  like just for clarification of the record at least on that

10  point --

11            THE COURT:  I apologize, but no.

12            MR. TANCK:  Okay.  Thank you, your Honor.

13            THE COURT:  Very good.  I think I understand,

14  and I'll take it under submission.

15            I'll issue an order this week, and probably it will

16  be that you haven't established enough, but I'll give you

17  60 days to do jurisdiction discovery only, and I'll resolve

18  the other questions that are presented.

19            Thank you very much for your arguments.

20                         -oOo-

21

22            I certify that the foregoing is a correct
              transcript from the record of proceedings
23            in the above-entitled matter.

24            /s/Margaret E. Griener        6/4/2014
              Margaret E. Griener, CCR #3, RDR
25            Official Reporter

1

## $

**$100,000** [3] - 31:25, 32:2, 32:4
**$50,000** [2] - 32:1, 32:3

## /

**/s/Margaret** [1] - 42:24

## 1

**10:00** [1] - 2:1
**12** [1] - 1:6
**120** [3] - 21:21, 41:6, 41:8
**122** [1] - 12:7
**1296** [1] - 40:2
**1993** [1] - 20:5
**1996** [1] - 20:16

## 2

**2** [1] - 23:23
**2011** [1] - 14:19
**2012** [2] - 28:21, 29:10
**2013** [1] - 12:1
**2014** [2] - 1:6, 2:1
**2016** [1] - 22:4
**2018** [4] - 21:25, 22:11, 23:2, 23:14
**23-1** [2] - 16:22, 18:3
**271** [1] - 40:12
**271(a** [1] - 40:16
**271(c** [1] - 40:16
**271(e** [1] - 40:16
**271(g** [1] - 40:16
**28** [1] - 2:1
**2:13-CV-1616-RCJ-NJK** [1] - 1:5

## 3

**3** [2] - 1:23, 42:24

## 4

**4(k)(1** [2] - 26:22, 37:24
**4(k)(2** [15] - 13:4, 16:4, 19:11, 19:16, 20:8, 26:25, 27:4, 30:13, 30:23, 31:4, 31:9, 37:25, 39:23, 40:7
**4(k)(2)** [2] - 20:3, 30:20
**400** [1] - 1:24

## 5

**50** [1] - 27:16
**51** [1] - 3:22
**52** [2] - 4:5, 5:2

## 6

**6/4/2014** [1] - 42:24
**60** [1] - 42:17

## 7

**775)329-9980** [1] - 1:25

## 8

**89501** [1] - 1:24

## 9

**9** [1] - 38:19
**94** [1] - 3:24

## A

**A.M** [1] - 2:1
**AARON** [1] - 1:14
**Aaron** [1] - 2:10
**ability** [1] - 6:8
**able** [1] - 20:6
**above-entitled** [1] - 42:23
**abrogated** [1] - 41:15
**absolutely** [4] - 11:23, 19:15, 21:5, 21:6
**accept** [1] - 19:5
**accident** [1] - 20:4
**according** [1] - 18:10
**accurately** [1] - 41:11
**accused** [1] - 25:12
**act** [3] - 9:12, 9:15, 11:18
**actual** [1] - 39:18
**additional** [1] - 7:17
**address** [1] - 25:4
**adjudge** [1] - 15:25
**admitted** [1] - 27:12
**admittedly** [1] - 33:10
**advertising** [1] - 18:22
**affiliated** [1] - 17:20
**affiliation** [3] - 7:21, 7:22, 28:4
**afraid** [1] - 33:23
**ago** [4] - 11:25, 25:16, 28:7, 28:15
**agree** [2] - 6:5, 8:1
**agreed** [2] - 3:19, 4:3
**agreement** [2] - 6:2,

39:10
**ahead** [1] - 9:8
**aimed** [1] - 8:25
**air** [1] - 22:17
**allegation** [1] - 38:10
**allegations** [1] - 3:8
**allegedly** [1] - 33:25
**alleviated** [1] - 12:3
**allow** [2] - 8:2, 9:25
**alternative** [1] - 26:25
**amount** [1] - 20:24
**amounts** [1] - 13:14
**analysis** [1] - 31:23
**announced** [1] - 18:20
**answer** [6] - 23:8, 23:9, 23:15, 23:17, 23:18, 39:2
**answered** [1] - 38:17
**anyplace** [1] - 10:6
**anyway** [1] - 15:18
**apologize** [1] - 42:11
**appeal** [1] - 6:22
**appear** [1] - 11:1
**appearances** [1] - 2:6
**APPEARANCES** [1] - 1:13
**appeared** [1] - 9:11
**appearing** [1] - 11:5
**appellate** [1] - 22:3
**application** [1] - 4:7
**applies** [1] - 41:3
**apply** [2] - 19:4, 19:20
**appointment** [1] - 12:10
**appreciate** [2] - 11:4, 12:18
**appreciated** [1] - 32:24
**approach** [2] - 5:23, 33:13
**appropriate** [3] - 7:7, 37:12, 39:17
**area** [1] - 7:24
**argue** [6] - 4:13, 4:14, 4:17, 6:3, 15:16, 30:24
**argued** [12] - 3:18, 3:19, 3:20, 3:23, 4:3, 4:8, 4:10, 26:18, 26:20, 28:8, 30:14, 31:15
**arguing** [3] - 21:4, 30:13, 30:25
**argument** [8] - 4:21, 14:15, 15:18, 24:9, 40:19, 41:5, 41:6, 41:11
**arguments** [5] - 15:16, 37:5, 37:10, 37:24, 42:19

**arising** [1] - 8:19
**arm** [4] - 26:25, 27:5, 27:23, 31:11
**arrangements** [1] - 9:25
**article** [3] - 17:23, 18:1, 28:23
**aspect** [1] - 12:25
**assertions** [1] - 19:6
**assume** [1] - 11:9
**assuming** [1] - 7:25
**AT&T** [1] - 20:16
**attacked** [1] - 42:7
**attended** [2] - 15:6, 28:22
**Attorney** [3] - 1:17, 1:19, 1:21
**Attorneys** [1] - 1:15
**attorneys'** [2] - 37:13, 37:14
**attributed** [2] - 18:1, 18:5
**August** [1] - 12:1
**authority** [2] - 14:17, 19:13
**AUTOMATION** [3] - 1:4, 1:7, 1:7
**Automation** [4] - 2:9, 2:11, 2:13, 29:12
**available** [3] - 16:24, 21:18, 25:19

## B

**backed** [1] - 19:6
**background** [1] - 8:9
**backwards** [1] - 41:7
**bad** [1] - 34:22
**base** [1] - 15:16
**based** [3] - 3:21, 20:8, 27:25
**basic** [2] - 14:8, 24:21
**basis** [3] - 7:15, 15:20, 20:24
**battle** [1] - 36:19
**bears** [1] - 40:5
**Beckhoff** [24] - 2:5, 7:18, 7:24, 9:7, 10:22, 13:11, 17:18, 17:20, 17:23, 18:22, 21:4, 25:7, 25:10, 25:11, 29:10, 29:12, 31:25, 33:7, 33:17, 33:19, 33:24
**BECKHOFF** [2] - 1:7, 1:7
**Beckhoff's** [3] - 3:20, 26:19, 32:11
**BEFORE** [1] - 1:2
**beginning** [1] - 35:25

**behalf** [6] - 2:8, 2:11, 2:13, 2:16, 2:17, 25:2
**behind** [1] - 24:21
**best** [2] - 14:9, 16:7
**better** [4] - 5:11, 5:13, 14:20, 14:21
**between** [10] - 8:11, 13:3, 14:12, 16:12, 16:13, 16:15, 19:12, 30:10, 39:9
**beyond** [2] - 20:1, 24:21
**binding** [3] - 29:24, 30:1, 30:17
**bit** [1] - 14:8
**blur** [1] - 14:9
**board** [1] - 28:23
**booth** [1] - 10:2
**bottom** [1] - 35:7
**boy** [1] - 41:2
**brief** [2] - 6:2, 36:3
**briefed** [1] - 24:10
**briefing** [9] - 5:5, 5:9, 5:14, 14:9, 31:8, 32:18, 36:5, 36:8, 37:21
**briefly** [1] - 3:8
**bring** [2] - 34:24, 35:12
**brings** [1] - 32:7
**broadcast** [1] - 8:24
**broader** [1] - 9:18
**brochures** [1] - 29:11
**brought** [5] - 4:5, 25:20, 27:22, 29:7, 32:22
**building** [1] - 17:25
**burden** [7] - 12:8, 16:14, 20:15, 32:12, 32:19, 32:22, 40:6
**burdened** [1] - 41:1
**burdens** [2] - 3:10, 12:6
**buy** [2] - 32:3, 32:4

## C

**cannot** [8] - 17:7, 17:12, 18:13, 23:17, 24:1, 26:11, 26:12, 27:19
**care** [1] - 20:12
**case** [93] - 6:12, 6:15, 6:21, 7:6, 7:8, 8:23, 10:7, 10:16, 10:18, 10:21, 11:2, 11:15, 11:20, 11:22, 11:24, 11:25, 12:1, 14:18, 14:19, 14:24, 15:1,

2

15:5, 15:8, 15:12, 15:13, 15:15, 16:3, 17:9, 19:13, 19:25, 20:7, 20:10, 20:17, 20:20, 21:11, 21:20, 21:22, 21:24, 21:25, 22:3, 23:1, 23:2, 23:10, 24:12, 26:5, 26:11, 27:7, 27:22, 28:4, 28:5, 29:14, 29:22, 30:4, 30:10, 30:11, 30:12, 30:13, 30:16, 30:17, 31:9, 31:4, 31:9, 31:10, 31:13, 31:16, 31:19, 31:20, 32:8, 32:9, 33:3, 35:16, 35:19, 35:22, 36:2, 36:15, 36:19, 37:1, 37:3, 37:18, 39:7, 39:15, 39:16, 39:20, 40:1, 40:2, 41:4, 41:17, 41:24

**cases** [6] - 11:21, 14:5, 30:24, 31:2, 31:5, 31:8
**caused** [1] - 34:17
**CCR** [2] - 1:23, 42:24
**certainly** [3] - 10:10, 14:3, 41:22
**certify** [1] - 42:22
**Chad** [1] - 2:15
**CHAD** [1] - 1:21
**Chadbourne** [2] - 2:8, 2:11
**challenge** [1] - 39:4
**chance** [1] - 34:23
**change** [4] - 6:4, 14:21, 20:25, 22:19
**charges** [1] - 3:5
**charging** [1] - 23:22
**child** [1] - 7:21
**circuit** [7] - 31:2, 31:3, 31:5, 31:6, 39:24, 39:25, 40:1, 40:8
**Circuit** [4] - 20:7, 20:16, 30:22, 30:24
**circumstances** [2] - 6:3, 35:10
**cite** [2] - 14:19, 16:8
**cited** [12] - 18:7, 18:16, 18:17, 18:21, 20:17, 25:8, 29:22, 31:8, 32:14, 32:15, 36:3, 40:2
**citing** [1] - 3:5
**claim** [2] - 6:13, 8:24
**clarification** [3] - 2:25, 3:15, 42:9
**clause** [1] - 41:18

**cleanly** [1] - 37:25
**clear** [3] - 19:1, 19:23, 20:18
**clearly** [3] - 7:18, 7:22, 37:22
**CLERK** [1] - 2:20
**cliche** [1] - 40:25
**client** [2] - 6:11, 23:22
**client's** [1] - 23:16
**close** [2] - 20:14, 20:21
**closed** [1] - 15:24
**code** [1] - 41:12
**collection** [2] - 19:25, 20:2
**comment** [2] - 5:20, 7:25
**comments** [1] - 2:23
**commerce** [3] - 15:14, 15:17, 15:23
**committed** [2] - 25:7, 25:9
**common** [3] - 7:20, 28:4, 29:14
**commonly** [3] - 29:18, 30:8, 30:18
**commonly-owned** [3] - 29:18, 30:8, 30:18
**companies** [2] - 18:7, 39:10
**company** [14] - 6:20, 8:7, 8:8, 13:3, 13:4, 14:17, 16:9, 17:12, 18:9, 18:14, 20:16, 20:22, 30:9, 39:8
**company's** [1] - 15:3
**compelled** [1] - 30:22
**compelling** [2] - 35:18, 36:23
**competent** [1] - 11:11
**complaint** [2] - 12:25, 19:16
**complement** [1] - 12:9
**complete** [2] - 3:1, 37:8
**complicated** [1] - 21:23
**comports** [1] - 27:25
**conceded** [1] - 13:2
**concept** [1] - 19:18
**concludes** [1] - 23:11
**conduct** [2] - 8:19
**conducts** [1] - 21:13
**conference** [1] - 11:1
**connection** [2] - 13:10, 16:15
**conservative** [1] - 6:11
**consider** [2] - 11:19, 24:20

**consideration** [3] - 12:10, 13:6, 14:4
**consistent** [1] - 40:24
**constitution** [2] - 15:10, 41:15
**constitutional** [3] - 14:22, 21:18, 41:7
**contact** [8] - 20:18, 24:19, 24:20, 26:23, 28:16, 39:14
**contacts** [12] - 10:8, 11:23, 13:7, 19:20, 19:25, 20:2, 20:21, 20:23, 27:25, 28:2, 28:5, 39:14
**contends** [1] - 27:19
**continue** [4] - 8:2, 37:18, 41:14, 41:23
**contract** [3] - 15:2, 39:9
**controlled** [1] - 30:8
**controls** [1] - 16:3
**convenience** [1] - 11:4
**convenient** [2] - 11:16, 32:12
**copyright** [1] - 16:25
**copyrighted** [1] - 17:11
**corporate** [1] - 29:13
**correct** [2] - 2:19, 42:22
**counsel** [8] - 11:9, 11:10, 11:12, 11:13, 38:13, 38:15, 39:21, 40:7
**counsel's** [1] - 38:22
**count** [1] - 11:5
**counterclaim** [1] - 4:16
**country** [1] - 39:1
**couple** [1] - 41:10
**course** [7] - 2:22, 3:10, 3:14, 7:21, 7:25, 8:20, 9:1
**court** [6] - 7:8, 27:10, 27:14, 30:5, 39:22, 41:9
**Court** [44] - 6:8, 7:1, 7:6, 7:9, 9:11, 11:6, 11:19, 11:25, 12:1, 12:6, 13:5, 13:12, 14:18, 15:8, 15:10, 15:22, 16:6, 16:21, 19:9, 20:1, 20:10, 21:10, 22:2, 22:19, 23:11, 24:17, 24:18, 24:20, 29:24, 30:2, 30:17, 34:6, 34:8, 35:15, 38:8, 38:15,

38:22, 39:18, 41:5, 41:13, 41:24, 42:2
**COURT** [36] - 1:1, 2:4, 2:14, 2:18, 2:21, 4:21, 5:11, 5:19, 5:24, 6:16, 7:11, 8:9, 9:17, 9:22, 9:24, 12:8, 12:12, 21:3, 21:7, 22:9, 22:12, 22:15, 22:22, 23:8, 23:19, 23:24, 24:3, 24:25, 25:10, 33:14, 38:3, 38:5, 42:3, 42:6, 42:11, 42:13
**Court's** [2] - 7:2, 16:19
**courtroom** [2] - 2:6, 19:8
**courts** [2] - 12:20, 37:10, 39:1
**create** [5] - 16:19, 17:7, 19:8, 29:6
**creates** [1] - 29:5
**crown** [2] - 37:6, 41:12
**customer** [1] - 33:21
**customers** [2] - 32:1, 33:24

---

**D**

**damage** [1] - 34:5
**damaged** [3] - 34:15, 34:17, 34:21
**damages** [6] - 6:13, 22:1, 31:18, 31:21, 31:22, 31:23
**date** [1] - 13:14
**dates** [1] - 5:8
**days** [1] - 42:17
**deal** [2] - 7:3, 34:20
**debates** [1] - 11:5
**decided** [1] - 11:25
**decides** [1] - 22:19
**decision** [3] - 6:23, 6:24, 13:2
**deemed** [1] - 7:7
**deems** [1] - 42:2
**deep** [1] - 21:15
**defend** [1] - 3:4
**defendant** [9] - 15:5, 15:11, 27:9, 27:19, 31:11, 31:12, 39:22, 40:5
**Defendants** [1] - 1:8
**defendants** [13] - 2:16, 2:17, 5:4, 6:5, 8:6, 10:10, 16:18, 25:9, 27:20, 28:8, 33:10, 34:18, 36:20
**DEFENDANTS** [1] -

1:19
**defendants'** [5] - 3:21, 3:24, 17:9, 27:25, 32:12
**defending** [1] - 12:21
**defense** [1] - 4:15
**defenses** [3] - 2:24, 2:25, 4:14
**definitive** [1] - 23:18
**delay** [1] - 41:13
**delineating** [1] - 3:4
**denial** [1] - 3:25
**denied** [1] - 10:7
**deny** [1] - 5:12
**denying** [1] - 36:25
**deserves** [1] - 13:21
**designations** [2] - 37:13, 37:14
**designed** [3] - 25:23, 25:24, 26:9
**designing** [2] - 28:11, 29:15
**detail** [2] - 33:12, 36:14
**determination** [1] - 40:4
**determined** [1] - 5:7
**developed** [3] - 25:23, 25:24, 26:9
**developing** [2] - 28:11, 29:15
**difference** [2] - 8:11, 19:12
**differences** [1] - 30:9
**different** [2] - 19:21, 29:2
**difficulty** [2] - 2:24, 14:14
**dime** [1] - 35:3
**direct** [1] - 27:12
**directly** [3] - 28:12, 29:16, 39:14
**discovery** [41] - 6:22, 7:17, 8:2, 12:19, 12:22, 13:14, 13:19, 13:22, 14:3, 14:6, 14:21, 20:25, 26:7, 26:12, 26:20, 33:22, 34:4, 35:20, 35:22, 35:23, 35:24, 36:2, 36:4, 36:7, 36:10, 36:12, 36:16, 36:19, 36:21, 36:23, 36:25, 37:4, 37:6, 37:9, 37:15, 38:2, 41:14, 41:17, 41:19, 41:22, 42:17
**discuss** [1] - 3:3
**discussed** [1] - 3:17
**discussing** [1] - 24:1

3

**disinclined** [1] - 7:11
**dismiss** [11] - 3:14, 3:21, 4:19, 5:21, 6:18, 6:19, 7:6, 7:9, 14:16, 36:6, 37:11
**displayed** [2] - 28:19, 28:22
**dispositive** [1] - 30:15
**dispute** [4] - 13:8, 19:10, 39:9, 39:13
**disputed** [6] - 12:21, 12:23, 13:22, 13:23, 14:5, 39:19
**distinction** [6] - 13:3, 14:11, 14:18, 16:12, 16:13
**distinctions** [3] - 14:8, 16:11, 24:21
**distinguish** [1] - 29:23
**distribution** [4] - 15:2, 15:3, 30:7, 39:10
**distributor** [2] - 30:5, 30:18
**district** [3] - 9:6, 12:2, 39:1
**District** [1] - 25:13
**DISTRICT** [3] - 1:1, 1:1, 1:2
**docket** [5] - 3:22, 3:24, 4:5, 5:1, 36:22
**Document** [1] - 16:22
**document** [16] - 13:15, 17:11, 17:13, 17:17, 17:18, 18:11, 18:13, 18:15, 18:17, 18:20, 18:21, 19:1, 19:2, 19:3, 19:6
**documents** [5] - 16:17, 16:20, 19:9, 26:9
**done** [4] - 22:4, 24:8, 32:13, 40:19
**Dorsey** [1] - 2:17
**down** [5] - 25:5, 25:19, 34:1, 34:2, 41:1
**dozen** [1] - 14:13
**dozens** [3] - 13:15, 13:19
**draw** [1] - 19:12
**drive** [1] - 34:1
**driving** [1] - 34:2
**drop** [1] - 32:4
**dropped** [1] - 24:12
**due** [4] - 14:1, 16:2, 27:25, 41:18
**during** [1] - 6:12
**duty** [1] - 32:11

# E

**early** [3] - 10:20, 11:12, 13:5
**effect** [1] - 34:2
**eight** [7] - 13:13, 13:19, 13:23, 21:1, 25:16, 28:7, 28:15
**either** [3] - 8:18, 10:5, 22:20
**element** [1] - 27:6, 27:7, 27:9, 27:17, 27:23
**elements** [3] - 27:4, 30:14, 32:14
**ELMO** [2] - 16:20, 28:23
**elsewhere** [1] - 32:17
**emergency** [1] - 12:2
**emphatic** [1] - 40:13
**employees** [3] - 10:10, 28:22, 33:20
**end** [3] - 7:3, 10:8, 18:1
**ended** [1] - 17:10
**ends** [1] - 17:12
**entire** [6] - 6:20, 7:8, 14:9, 18:14, 23:10, 24:22
**entitled** [5] - 12:22, 36:2, 36:16, 38:2, 42:23
**entity** [8] - 25:23, 25:25, 26:8, 27:2, 27:13, 29:15, 30:6
**equivalent** [1] - 14:25
**erosion** [3] - 31:18, 31:23, 31:24, 32:6, 33:3
**error** [1] - 36:4
**especially** [2] - 9:25, 35:17
**essentially** [1] - 29:18
**establish** [4] - 8:17, 17:10, 17:12, 18:13
**established** [3] - 7:15, 7:19, 42:16
**event** [1] - 28:24
**events** [1] - 32:25
**evidence** [9] - 13:11, 16:8, 17:4, 17:5, 17:22, 21:12, 24:20, 38:9
**exactly** [2] - 23:16, 33:23
**example** [7] - 3:3, 4:3, 7:17, 7:21, 17:1, 31:10, 31:24
**examples** [1] - 42:1
**except** [2] - 4:22, 16:4

**excess** [2] - 2:22, 4:9
**exercise** [4] - 11:9, 11:10, 16:2, 27:24
**exercised** [1] - 20:12
**exhaustive** [1] - 40:19
**Exhibit** [2] - 17:16
**exhibit** [1] - 17:16
**exhibits** [2] - 17:15, 29:2
**exist** [2] - 15:1, 20:21
**existed** [1] - 11:24
**expectation** [1] - 11:15
**expeditious** [1] - 41:21
**expires** [1] - 21:25
**explain** [1] - 24:11
**EXPO** [2] - 18:23, 28:21
**extending** [2] - 20:13, 22:3
**extensively** [1] - 24:10
**extract** [1] - 14:1
**extreme** [1] - 11:7
**extremely** [1] - 40:10
**eyes** [2] - 37:13, 37:14

# F

**facie** [2] - 36:14, 38:1
**fact** [14] - 14:6, 14:12, 16:19, 17:11, 20:25, 25:15, 29:25, 30:9, 31:8, 31:18, 31:22, 35:17, 36:5, 38:23
**factor** [2] - 8:20, 11:18
**facts** [9] - 12:21, 12:23, 14:19, 14:20, 14:22, 30:10, 31:12, 39:19
**factual** [3] - 13:8, 13:9, 19:6, 19:8
**fair** [1] - 21:9
**fairness** [1] - 8:20
**familiar** [1] - 35:15
**familiarity** [1] - 11:14
**far** [3] - 18:6, 20:5, 20:6
**fast** [1] - 41:23
**favorite** [2] - 17:15, 17:16
**FCRR** [1] - 1:23
**Fears** [1] - 2:15
**FEARS** [2] - 1:21, 2:15
**federal** [13] - 26:25, 27:5, 27:6, 27:8, 27:23, 31:2, 31:6, 31:11, 39:24, 40:1, 40:8, 40:12
**few** [6] - 12:15, 18:10,

18:12, 31:14, 38:6
**field** [1] - 20:14
**fight** [1] - 22:3
**fighting** [1] - 26:4
**file** [3] - 2:22, 10:3, 41:8
**filed** [1] - 19:16
**filing** [2] - 13:13, 18:3
**filings** [2] - 21:21, 41:6
**filled** [1] - 12:12
**final** [3] - 12:10, 22:20, 27:23
**finally** [1] - 18:19
**firm** [1] - 2:8
**first** [13] - 6:17, 6:23, 6:24, 7:3, 7:5, 9:9, 19:15, 27:3, 27:5, 29:24, 30:2, 36:5, 41:21
**five** [1] - 22:5
**flat** [1] - 36:24
**flights** [1] - 11:7
**Foldenauer** [1] - 2:10
**FOLDENAUER** [2] - 1:14, 2:10
**FOR** [2] - 1:14, 1:19
**forego** [1] - 35:2
**foregoing** [1] - 42:22
**foreign** [7] - 15:3, 15:5, 15:11, 17:12, 20:16, 30:6, 31:12
**forever** [1] - 13:24
**formal** [1] - 19:23
**forth** [2] - 5:4, 5:6
**forum** [4] - 8:18, 11:16, 15:9, 27:19
**FOUNTAIN** [2] - 1:17, 2:12
**Fountain** [1] - 2:12
**four** [1] - 15:8
**free** [1] - 12:16
**front** [5] - 4:18, 5:8, 16:21, 26:18, 38:13
**fulfilling** [1] - 40:6
**full** [2] - 12:9, 34:4

# G

**gain** [1] - 23:1
**general** [8] - 8:16, 13:1, 13:2, 16:13, 24:23, 27:10, 27:13, 39:2
**generally** [1] - 8:20
**Gerd** [4] - 18:2, 18:7, 18:8, 18:9
**German** [6] - 6:20, 8:8, 13:3, 14:12, 14:17, 16:9, 24:22,

25:24, 26:8, 27:2, 27:13
**Germany** [12] - 7:18, 9:7, 10:22, 10:25, 21:4, 24:9, 29:20, 34:24, 35:2, 35:3, 35:11
**glad** [1] - 11:6
**GmbH** [47] - 1:7, 6:20, 7:6, 8:8, 14:12, 16:13, 16:15, 16:24, 16:25, 17:7, 18:25, 21:19, 23:1, 23:2, 23:6, 24:6, 24:8, 24:9, 24:12, 24:13, 24:22, 25:11, 26:4, 26:8, 26:16, 26:24, 27:1, 27:13, 27:21, 28:9, 28:11, 28:21, 28:25, 29:5, 29:11, 29:15, 33:8, 37:3, 38:9, 38:11, 38:17, 38:24, 38:25, 39:20, 40:23, 41:12, 41:16
**GmbH's** [2] - 29:12, 41:20
**governed** [1] - 31:2
**governing** [2] - 19:13, 39:25
**grant** [2] - 2:22, 16:6
**gray** [1] - 7:24
**great** [2] - 20:12, 34:22
**greater** [1] - 3:15
**Griener** [3] - 1:23, 42:24, 42:24
**grips** [1] - 15:13
**grossly** [1] - 40:20

# H

**half** [1] - 11:2
**hand** [1] - 33:11
**hangs** [1] - 41:24
**hard** [3] - 13:25, 26:5, 31:3
**hardly** [1] - 11:2
**harm** [1] - 34:17
**haul** [1] - 40:25
**headquarters** [1] - 29:20
**hear** [3] - 2:23, 37:10, 38:12
**heard** [3] - 40:11, 40:13, 40:18
**HEARING** [1] - 1:11
**hearing** [5] - 3:16, 10:25, 11:8, 27:11, 28:14
**hears** [1] - 24:19

**hearsay** [3] - 17:21, 18:11, 18:13
**heavily** [1] - 36:9
**held** [3] - 14:19, 30:8, 31:9
**hesitate** [1] - 40:25
**higher** [1] - 20:15
**highly** [1] - 11:11
**hold** [2] - 12:20, 29:19
**Honor** [76] - 2:7, 2:15, 3:16, 4:2, 4:10, 4:11, 4:18, 6:11, 6:18, 9:10, 9:14, 10:4, 10:15, 10:25, 11:3, 11:8, 12:5, 12:16, 12:22, 13:21, 14:4, 14:7, 15:7, 15:11, 16:3, 17:8, 18:15, 18:22, 18:25, 19:4, 19:14, 19:19, 20:4, 20:25, 21:5, 21:6, 21:20, 22:6, 22:8, 22:25, 23:6, 24:2, 24:16, 25:1, 25:16, 25:17, 28:3, 28:8, 28:11, 30:21, 31:1, 32:7, 32:18, 32:24, 33:6, 33:11, 33:18, 34:10, 34:11, 35:4, 35:9, 36:13, 37:19, 38:1, 38:4, 38:7, 39:16, 40:11, 40:18, 40:20, 41:1, 41:7, 41:10, 41:21, 42:4, 42:12
**Honor's** [2] - 33:4, 35:25
**HONORABLE** [1] - 1:2
**hope** [1] - 11:19
**Hoppe** [4] - 18:2, 18:7, 18:8, 18:9
**hour** [2] - 11:8, 41:5
**house** [3] - 17:24, 18:4, 18:10
**hundred** [1] - 18:23
**hurry** [1] - 12:16
**hypothetical** [2] - 39:6, 39:7

### I

**idea** [1] - 19:17
**identical** [1] - 17:2
**identified** [3] - 27:21, 32:17, 39:24
**identify** [2] - 27:20, 39:22
**ignores** [1] - 16:12
**ignoring** [1] - 31:17
**illegal** [1] - 8:19

**illuminated** [1] - 30:15
**imagine** [2] - 18:11, 22:2
**immerse** [1] - 11:13
**impact** [1] - 23:3
**important** [2] - 18:19, 24:7
**importantly** [5] - 25:22, 30:3, 30:4, 30:11, 32:11
**importation** [4] - 29:1, 32:25, 40:14, 40:21
**importing** [1] - 25:12
**imports** [1] - 40:16
**imposition** [7] - 8:10, 8:14, 8:18, 8:20, 8:22, 9:2, 9:5
**inapplicable** [2] - 19:18, 19:19
**inappropriate** [1] - 22:20
**INC** [1] - 1:4
**incidentally** [1] - 40:22
**inclination** [2] - 5:12, 35:25
**include** [1] - 9:25
**including** [3] - 10:12, 10:19, 33:4
**inconvenience** [3] - 10:21, 11:3, 11:17
**inconvenient** [1] - 10:18
**incredibly** [1] - 21:23
**independent** [1] - 30:7
**indicated** [1] - 39:21
**indication** [1] - 20:9
**indulgence** [1] - 16:6
**information** [2] - 14:1, 37:17
**infringed** [1] - 14:2
**infringement** [7] - 10:17, 14:25, 25:7, 25:13, 25:21, 30:19, 40:12
**infringements** [1] - 29:2
**infringes** [1] - 26:13
**infringing** [6] - 9:12, 9:15, 11:18, 25:12, 33:25, 34:16
**injunction** [20] - 3:9, 3:13, 4:4, 4:6, 4:7, 4:23, 4:25, 5:2, 5:5, 5:12, 5:15, 5:16, 6:1, 6:10, 22:11, 23:2, 31:16, 31:17, 31:21
**injured** [1] - 14:24
**inoperable** [1] - 34:15
**inspect** [4] - 34:16,

34:21, 34:23, 34:24
**inspected** [2] - 33:5, 34:12
**inspection** [3] - 25:19, 35:5, 35:10
**instance** [1] - 33:17
**instead** [1] - 15:14
**insufficient** [1] - 37:8
**intended** [1] - 41:18
**international** [1] - 20:14
**interrogatories** [1] - 13:15
**invalidity** [1] - 3:5
**involve** [2] - 30:18, 30:19
**involving** [2] - 24:13, 30:12
**issue** [21] - 5:15, 6:2, 6:6, 7:2, 7:10, 7:14, 8:5, 12:19, 15:7, 16:4, 16:19, 19:8, 21:9, 21:25, 23:25, 33:22, 40:7, 40:8, 41:24, 42:15
**issued** [1] - 33:10
**issues** [8] - 11:20, 13:17, 13:22, 13:23, 22:6, 34:6, 35:15, 41:22
**item** [1] - 8:23
**itself** [4] - 7:24, 17:13, 18:13, 21:1

### J

**January** [1] - 26:19
**Jersey** [3] - 15:25, 17:10, 30:12
**jewels** [2] - 37:6, 41:12
**Jonathan** [1] - 2:12
**JONATHAN** [1] - 1:17
**JONES** [1] - 1:2
**Judge** [8] - 26:19, 27:12, 27:15, 27:18, 29:9, 37:23, 38:14, 38:16
**JUDGE** [1] - 1:2
**judge** [4] - 12:9, 26:19, 26:21
**judges** [2] - 12:4, 12:5, 12:9
**judgment** [1] - 11:12
**judicial** [1] - 12:2
**jurisdiction** [73] - 3:22, 4:19, 7:14, 7:16, 7:23, 8:2, 8:11, 8:12, 8:16, 8:21, 8:24, 9:7, 10:18,

12:25, 13:1, 14:23, 15:10, 15:20, 16:2, 16:10, 16:13, 16:14, 17:7, 17:11, 17:13, 18:14, 19:22, 20:7, 20:13, 20:22, 23:12, 24:10, 24:23, 26:16, 26:22, 26:24, 27:1, 27:5, 27:10, 27:11, 27:13, 27:16, 27:24, 28:7, 28:10, 29:23, 30:14, 30:19, 30:23, 30:25, 31:1, 31:4, 31:7, 31:9, 31:11, 32:10, 35:17, 35:20, 36:1, 36:6, 36:15, 36:9, 38:10, 38:17, 38:25, 39:2, 39:8, 39:15, 39:23, 42:17
**jurisdictional** [15] - 12:15, 13:17, 13:18, 14:15, 15:18, 28:16, 35:22, 35:23, 36:2, 36:7, 36:10, 36:12, 36:16, 37:24, 38:2

### K

**keep** [4] - 33:4, 34:11, 35:5, 39:20
**kept** [1] - 25:18
**key** [1] - 18:25
**kind** [2] - 11:2, 21:9
**kinds** [1] - 16:24
**knows** [1] - 31:1
**Koppe** [6] - 26:19, 27:12, 27:15, 27:18, 38:14, 38:16
**Koppe's** [2] - 29:10, 37:23

### L

**lack** [2] - 24:6, 24:9
**laid** [1] - 7:13
**Lancaster** [14] - 2:16, 25:3, 25:6, 26:2, 27:11, 27:15, 27:17, 28:23, 29:22, 30:21, 30:24, 31:15, 31:17, 35:21
**LANCASTER** [22] - 1:19, 5:21, 5:25, 6:17, 8:4, 9:9, 9:20, 9:23, 10:14, 12:11, 12:14, 21:5, 21:8, 22:10, 22:14, 22:16, 22:25, 23:15, 23:21, 23:25, 24:5, 38:6
**language** [3] - 17:25,

18:1, 40:24
**Las** [9] - 1:7, 1:18, 1:22, 8:23, 9:3, 9:13, 10:6, 17:6, 18:20
**last** [7] - 6:25, 15:19, 15:20, 21:1, 22:8, 24:5
**lasting** [1] - 22:11
**law** [7] - 30:1, 31:2, 31:3, 31:5, 31:7, 36:2, 39:21
**Law** [4] - 1:15, 1:17, 1:19, 1:21
**lawsuit** [3] - 10:3, 24:8, 24:15
**lawyer** [1] - 19:7
**lawyers** [1] - 11:13
**lawyers'** [1] - 11:4
**lays** [2] - 37:22, 37:24
**learn** [1] - 37:7
**least** [5] - 8:2, 11:14, 28:20, 36:1, 42:9
**leave** [3] - 5:16, 7:2, 40:4
**led** [2] - 6:5, 18:23
**left** [1] - 22:4
**level** [1] - 22:3
**Lewis** [1] - 2:12
**liabilities** [1] - 16:1
**liability** [1] - 30:12
**lies** [1] - 24:20
**lifted** [1] - 5:7
**likely** [1] - 26:23
**likewise** [2] - 4:9, 4:15
**line** [1] - 19:12
**listened** [1] - 41:5
**listens** [1] - 24:18
**litigated** [2] - 23:6, 39:12
**litigating** [1] - 32:11
**litigation** [3] - 22:15, 23:12, 24:13
**lived** [1] - 35:6
**LLC** [29] - 1:7, 8:7, 14:12, 14:16, 16:12, 17:3, 17:4, 17:5, 17:23, 19:1, 19:3, 21:4, 21:12, 21:13, 21:18, 22:6, 23:4, 23:12, 23:13, 24:22, 25:10, 25:11, 25:23, 33:7, 33:17, 33:19, 39:9, 40:23
**long-arm** [4] - 26:25, 27:5, 27:23, 31:11
**look** [6] - 29:19, 32:18, 36:22, 37:20, 37:23, 39:18
**looking** [1] - 10:4
**lost** [2] - 31:19, 31:23

**lumping** [1] - 14:14

## M

**machine** [16] - 6:7, 6:8, 6:9, 9:13, 9:14, 14:25, 17:13, 17:14, 19:3, 25:15, 25:17, 25:19, 25:20, 25:22, 34:21
**machines** [4] - 6:6, 15:9, 17:9, 21:15
**Magistrate** [1] - 37:23
**magistrate** [5] - 6:22, 18:17, 26:18, 26:21
**magistrate's** [1] - 3:25
**main** [1] - 9:2
**manager** [1] - 29:13
**manuals** [1] - 29:6
**manufactured** [3] - 25:23, 25:24, 26:9
**manufacturing** [2] - 28:12, 29:15
**Margaret** [2] - 1:23, 42:24
**market** [2] - 9:19, 33:24
**marketing** [2] - 16:23, 29:5
**massive** [2] - 13:14, 41:19
**material** [1] - 13:10
**materials** [6] - 16:23, 16:24, 17:2, 17:3, 29:5
**matter** [4] - 14:22, 17:21, 21:16, 42:23
**MAY** [1] - 2:1
**McIntyre** [12] - 14:18, 16:1, 17:9, 19:13, 29:22, 29:25, 30:4, 30:6, 30:10, 30:11, 30:16, 39:11
**mean** [1] - 6:1
**meant** [1] - 41:15
**meantime** [1] - 36:10
**mechanism** [1] - 22:21
**meet** [1] - 32:19
**mention** [1] - 21:20
**mentioned** [2] - 18:16, 19:15
**mentioning** [1] - 17:14
**mercy** [1] - 41:2
**merits** [2] - 14:8, 26:12
**messy** [1] - 21:23
**met** [3] - 27:7, 27:17, 32:23
**might** [6] - 5:22, 8:16,

16:19, 19:7, 20:9, 38:10
**million** [1] - 23:23
**minimum** [1] - 20:18
**Minneapolis** [1] - 1:20
**Minnesota** [13] - 1:20, 7:8, 12:5, 17:24, 18:4, 18:8, 28:24, 29:13, 34:13, 34:21, 35:2, 39:8, 39:12
**misquoted** [1] - 40:20
**moment** [1] - 16:5
**monetary** [1] - 31:22
**money** [1] - 36:11
**months** [7] - 13:13, 13:19, 13:24, 21:1, 25:16, 28:7, 28:15
**moot** [1] - 6:24
**most** [3] - 18:19, 25:6, 30:4
**motion** [32] - 3:9, 3:13, 3:21, 3:23, 3:24, 3:25, 4:4, 4:12, 4:13, 4:18, 4:19, 4:22, 5:15, 5:21, 5:22, 6:1, 6:10, 6:18, 6:19, 6:20, 6:21, 7:5, 7:6, 7:8, 12:16, 12:21, 13:10, 14:16, 19:17, 24:22, 26:19, 36:6
**MOTION** [1] - 1:11
**motions** [5] - 2:21, 3:11, 3:14, 3:17, 3:18, 3:20, 4:2, 4:9, 4:12, 4:18, 4:22, 5:20, 6:19, 7:1, 26:20
**movement** [1] - 40:22
**moving** [2] - 17:24, 34:14
**MR** [35] - 2:7, 2:10, 2:12, 2:15, 3:16, 5:1, 5:18, 5:21, 5:25, 6:17, 8:4, 9:9, 9:20, 9:23, 10:4, 12:11, 12:14, 21:5, 21:8, 22:10, 22:14, 22:16, 22:25, 23:15, 23:21, 23:25, 24:5, 25:1, 25:11, 33:16, 38:4, 38:6, 42:4, 42:7, 42:12
**multiple** [1] - 15:6
**multiplying** [1] - 37:1
**murders** [1] - 41:2
**must** [2] - 20:21, 27:20

## N

**name** [1] - 2:7
**named** [1] - 18:2
**nationwide** [3] - 13:6, 20:21, 20:23
**naturally** [1] - 18:9
**necessarily** [1] - 3:18
**necessary** [2] - 3:24, 34:6
**necessity** [1] - 23:10
**need** [16] - 3:14, 3:18, 3:20, 4:8, 6:2, 7:4, 9:4, 14:6, 19:5, 22:23, 23:5, 24:6, 24:15, 34:16, 36:12, 37:17
**needed** [1] - 13:18
**needs** [4] - 21:12, 21:17, 22:7, 37:13
**NEVADA** [2] - 1:1, 2:1
**Nevada** [25] - 1:7, 1:18, 1:22, 1:24, 9:1, 9:12, 9:16, 10:7, 10:8, 10:14, 10:23, 11:11, 11:13, 11:22, 11:23, 25:8, 25:13, 25:16, 25:18, 25:20, 26:24, 27:2, 28:13, 34:13, 40:14
**never** [7] - 9:14, 9:15, 15:13, 30:22, 40:18
**new** [1] - 17:24
**New** [5] - 1:15, 15:25, 17:10, 30:12
**news** [1] - 17:19
**next** [2] - 32:7, 41:10
**nine** [1] - 5:9
**nine-week** [1] - 5:9
**Ninth** [4] - 20:7, 20:16, 30:22, 30:24
**none** [2] - 10:13, 10:17
**nonetheless** [1] - 20:22
**nonparty** [1] - 32:20
**notes** [3] - 19:22, 19:23, 20:8
**nothing** [5] - 10:11, 11:22, 13:8, 23:1, 23:23
**notice** [1] - 16:25
**notions** [1] - 20:13
**number** [6] - 3:22, 4:5, 5:2, 17:16, 25:3, 33:3

## O

**objection** [2] - 3:25,

4:20
**objections** [1] - 36:24
**obligation** [2] - 35:4, 35:6
**obviate** [1] - 23:10
**obvious** [1] - 12:17
**obviously** [6] - 6:25, 11:11, 11:21, 35:4, 35:25, 37:10
**obviousness** [1] - 3:5
**occur** [3] - 22:18, 24:14, 35:10
**occurred** [8] - 9:12, 9:16, 14:25, 31:18, 31:19, 32:25, 34:5, 38:13
**occurs** [1] - 14:4
**odd** [1] - 30:23
**OF** [2] - 1:1, 1:11
**offer** [7] - 6:8, 9:20, 10:6, 10:13, 31:24, 33:8, 33:19
**offered** [5] - 17:21, 32:2, 32:3, 33:20
**offering** [2] - 22:23, 22:24
**offers** [1] - 31:25
**Official** [2] - 1:23, 42:25
**omnibus** [1] - 9:24
**once** [4] - 10:23, 32:4, 34:4, 35:7
**one** [37] - 6:6, 6:25, 7:1, 8:9, 10:20, 12:9, 13:9, 13:16, 14:10, 16:4, 17:15, 17:16, 18:15, 18:17, 19:21, 20:7, 22:8, 24:5, 24:22, 28:21, 30:8, 31:10, 33:17, 33:19, 34:10, 34:25, 35:12, 38:8, 38:12, 38:20, 40:11, 40:21, 40:22, 41:1, 42:4
**ones** [1] - 31:12
**open** [3] - 17:24, 18:4, 18:10
**operations** [2] - 17:4, 21:13
**opinion** [5] - 15:24, 23:22, 29:25, 30:1
**opportunity** [4] - 11:6, 13:22, 13:24
**opposed** [2] - 8:11, 8:12
**option** [1] - 35:1
**order** [17] - 4:11, 6:22, 7:13, 9:21, 25:4, 27:18, 29:10, 29:23, 33:4, 33:6, 33:21,

34:1, 34:3, 35:8, 37:12, 37:23, 42:15
**ordered** [4] - 4:10, 11:1, 33:18, 34:8
**orders** [11] - 18:17, 33:3, 33:9, 33:10, 33:12, 34:8, 35:14, 36:23, 36:24, 42:1
**orphan** [1] - 41:3
**otherwise** [1] - 12:12
**outlined** [1] - 29:9
**outside** [1] - 37:13
**overcome** [1] - 31:10
**own** [3] - 7:9, 24:14, 35:3
**owned** [3] - 29:18, 30:8, 30:18

## P

**PACK** [2] - 18:23, 28:21
**page** [1] - 38:19
**pages** [2] - 2:22, 4:9
**pair** [1] - 24:21
**paper** [2] - 19:7, 33:12
**papers** [2] - 14:13, 20:17
**parent** [1] - 7:21
**parent-child** [1] - 7:21
**parents** [1] - 41:2
**Parke** [2] - 2:8, 2:11
**part** [2] - 6:21, 18:3
**particular** [5] - 8:13, 12:24, 20:23, 25:4, 42:1
**particularly** [3] - 8:25, 11:14, 13:25
**parties** [16] - 3:17, 3:19, 4:5, 4:6, 5:1, 5:2, 6:1, 10:19, 11:12, 11:18, 11:21, 19:5, 24:10, 32:10, 33:7, 33:18
**partly** [1] - 18:16
**party** [12] - 10:9, 10:10, 12:21, 13:9, 13:10, 13:21, 14:1, 15:3, 18:23, 41:7
**past** [1] - 13:13
**patent** [14] - 9:17, 10:12, 14:25, 21:25, 22:5, 25:8, 25:14, 25:21, 27:7, 28:17, 30:13, 30:19, 31:2, 31:9
**patents** [2] - 22:5, 26:13, 31:4
**PAUL** [1] - 1:14
**Paul** [2] - 2:7, 25:2

**pay** [1] - 35:11
**peculiar** [1] - 16:7
**pendency** [1] - 6:12
**pending** [2] - 6:23, 26:20
**people** [1] - 5:16
**per** [1] - 5:16
**perhaps** [7] - 12:3, 13:5, 18:19, 22:2, 24:11, 38:15, 39:14
**period** [1] - 5:9
**permission** [2] - 7:2, 16:19
**permit** [1] - 41:13
**person** [2] - 18:2, 18:6
**personal** [11] - 3:21, 7:16, 8:15, 20:13, 23:15, 26:24, 30:25, 31:1, 31:6, 36:15, 38:25
**personam** [3] - 8:12, 8:21, 9:6
**persuading** [1] - 14:14
**Peter** [1] - 2:16
**PETER** [1] - 1:19
**phone** [1] - 2:19
**picture** [2] - 22:2, 34:4
**piece** [1] - 38:9
**pieces** [1] - 16:8
**place** [7] - 4:6, 5:3, 5:16, 12:19, 20:5, 21:14, 37:12
**places** [1] - 28:20
**plaintiff** [9] - 1:5, 2:9, 10:16, 14:20, 14:21, 14:24, 15:11, 15:20, 40:5
**PLAINTIFF** [1] : 1:14
**plaintiff's** [1] - 4:12
**plaintiffs** [2] - 3:6, 15:16
**plan** [1] - 6:14
**planning** [1] - 17:6
**plans** [1] - 9:13
**plausible** [3] - 6:13, 15:18, 20:24
**play** [1] - 39:23
**pleading** [3] - 12:7, 12:24, 13:9
**pleadings** [2] - 36:18, 41:9
**pleads** [1] - 41:2
**plurality** [2] - 30:1
**plus** [1] - 41:6
**pocket** [1] - 21:16
**podium** [1] - 5:23
**point** [26] - 8:9, 16:7, 18:25, 22:8, 24:4, 24:5, 26:4, 26:6, 26:14, 26:15, 27:4,

28:7, 28:8, 28:9, 29:23, 30:21, 32:7, 33:2, 35:14, 35:21, 36:17, 37:2, 38:20, 40:13, 40:21, 42:10
**pointed** [1] - 27:18, 28:3, 29:10
**points** [7] - 10:20, 17:25, 25:3, 31:14, 37:19, 37:22, 38:6
**posed** [1] - 24:3
**position** [1] - 38:24
**possible** [3] - 7:7, 27:20, 39:6
**possibly** [2] - 17:14, 23:5
**posting** [1] - 17:20
**potentially** [2] - 13:6, 34:15
**power** [1] - 15:25
**practical** [5] - 26:4, 26:6, 26:14, 26:15, 37:2
**practically** [1] - 11:17
**precedent** [1] - 29:24
**predicted** [1] - 38:8
**preliminary** [10] - 3:9, 3:13, 4:4, 4:7, 4:23, 4:24, 5:12, 5:14, 6:1, 6:10
**presence** [2] - 23:4, 24:6
**present** [5] - 3:12, 3:15, 24:15, 28:25, 29:17
**presented** [1] - 42:18
**press** [1] - 17:19
**pressed** [1] - 31:3
**pretty** [2] - 8:16, 17:1
**prevent** [1] - 41:18
**previously** [1] - 4:4
**price** [10] - 31:18, 31:23, 31:24, 32:4, 32:6, 33:2, 33:20, 33:25, 34:1, 34:2
**prima** [2] - 36:14, 38:1
**problem** [1] - 9:2
**procedure** [1] - 5:3
**proceed** [1] - 3:12
**proceedings** [1] - 42:22
**process** [4] - 14:2, 16:2, 27:25, 41:18
**produced** [1] - 29:5
**product** [9] - 15:6, 28:9, 31:25, 32:2, 32:5, 34:1, 37:7
**products** [3] - 8:25, 15:3, 30:12
**profits** [2] - 31:19,

31:23
**prohibited** [1] - 15:10
**promotion** [1] - 29:3, 32:25
**proof** [3] - 32:15, 32:16, 32:21
**property** [1] - 10:11
**proposition** [1] - 39:3
**proscribed** [1] - 8:19
**protect** [1] - 41:15
**protective** [1] - 37:11
**proved** [1] - 10:24
**provide** [2] - 16:18, 20:8
**provided** [3] - 16:18, 17:17, 17:18
**providing** [1] - 24:12
**provision** [1] - 13:6
**pure** [1] - 17:21
**purported** [1] - 38:20
**purporting** [1] - 40:11
**purposes** [1] - 8:3
**pursued** [1] - 36:9
**push** [1] - 23:9
**pushing** [1] - 41:23
**put** [4] - 16:20, 16:21, 20:5, 28:23
**putting** [2] - 18:23, 33:25

## Q

**questioning** [1] - 27:12
**questions** [2] - 24:16, 42:18
**quickly** [1] - 37:11
**quite** [1] - 9:21
**quote** [10] - 18:5, 20:10, 20:11, 20:14, 20:20, 20:21, 33:20, 38:12, 38:13, 40:12
**quoted** [1] - 18:12
**quotes** [1] - 33:25
**quoting** [1] - 42:7

## R

**raise** [2] - 34:6, 35:20
**raised** [1] - 40:19
**rather** [1] - 19:9
**RDR** [1] - 42:24
**reading** [1] - 40:2
**real** [1] - 11:17
**really** [5] - 4:17, 6:19, 8:14, 37:21, 42:8
**reargued** [1] - 5:6
**reason** [5] - 15:16, 19:19, 21:17, 26:5, 27:3, 34:7, 35:16,

35:18, 36:9, 36:18, 37:15, 39:19, 41:21
**reasonableness** [1] - 21:9
**reasons** [3] - 7:12, 24:11, 24:14
**reconsideration** [1] - 36:24
**record** [8] - 36:14, 38:12, 38:21, 39:18, 42:8, 42:9, 42:22
**refer** [2] - 8:6, 33:14
**reference** [2] - 13:4, 19:16
**referenced** [1] - 21:10
**referencing** [1] - 13:5
**referred** [2] - 12:2, 41:11
**refers** [1] - 12:24
**regard** [2] - 7:24, 16:17
**regarding** [1] - 4:24
**regional** [2] - 31:2, 31:5
**rejected** [1] - 15:15
**rejecting** [1] - 15:15
**related** [2] - 30:18, 31:4
**relates** [2] - 13:17, 40:13
**relating** [4] - 15:6, 20:1, 26:10, 39:14
**relative** [2] - 7:14, 21:4
**release** [1] - 17:19
**released** [1] - 5:5
**relevant** [2] - 10:9, 42:2
**relief** [6] - 21:11, 21:17, 22:7, 22:23, 22:24, 31:15
**relies** [1] - 38:13
**rely** [2] - 19:17, 38:22
**remaining** [1] - 4:2
**remains** [2] - 6:21, 22:16
**remember** [1] - 28:6
**renewed** [1] - 4:7
**RENO** [1] - 2:1
**Reno** [1] - 1:24
**repairable** [1] - 34:17
**repeatedly** [1] - 16:12
**reported** [2] - 10:16, 19:23
**Reported** [1] - 1:23
**Reporter** [1] - 1:23, 42:25
**representation** [3] - 38:16, 38:18, 40:11
**requested** [1] - 36:7
**requests** [3] - 3:15,

13:16, 13:19
**require** [1] - 2:25
**required** [2] - 3:11, 7:16
**requirement** [1] - 40:6
**requiring** [1] - 23:8
**research** [1] - 40:20
**reserve** [1] - 20:12
**resolution** [3] - 8:1, 35:9, 41:22
**resolve** [3] - 4:22, 7:8, 42:17
**resolved** [4] - 6:15, 7:4, 21:17, 24:1
**resolves** [1] - 7:1
**resort** [2] - 15:19, 15:20
**respect** [1] - 7:18
**responded** [1] - 36:6
**response** [2] - 3:13, 42:5
**rests** [1] - 24:22
**retain** [1] - 23:11
**return** [2] - 6:9, 35:9
**reversible** [1] - 36:3
**rights** [6] - 14:2, 16:1, 21:19, 41:8, 41:14, 41:20
**road** [1] - 25:20
**ROBERT** [1] - 1:2
**Rocca** [1] - 2:13
**ROCKWELL** [1] - 1:4
**Rockwell** [35] - 2:5, 2:9, 2:11, 2:13, 10:19, 10:20, 13:11, 13:15, 13:18, 14:14, 14:22, 15:12, 15:13, 16:11, 16:18, 17:17, 17:25, 18:21, 18:22, 20:6, 21:1, 21:11, 21:17, 22:7, 24:7, 24:13, 24:14, 24:19, 25:2, 36:20, 38:20, 39:3, 41:4, 41:16, 41:23
**Rockwell's** [6] - 11:10, 14:9, 16:7, 16:14, 17:15, 26:13
**Rothgerber** [1] - 2:13
**rule** [8] - 5:19, 19:5, 19:18, 19:23, 19:24, 20:5, 20:8, 20:17
**Rule** [5] - 13:4, 19:11, 19:16, 20:3, 40:6
**ruling** [1] - 41:13
**runs** [1] - 17:4

## S

**sale** [2] - 32:2, 32:3

**sales** [8] - 9:25, 21:16, 22:1, 22:18, 23:7, 29:8, 29:11, 29:12
**schedule** [1] - 5:5
**seated** [1] - 2:4
**second** [6] - 3:23, 21:9, 27:9, 34:10, 35:1, 40:6
**secondly** [1] - 28:19
**Section** [1] - 40:12
**sections** [1] - 3:5
**see** [9] - 2:5, 7:15, 16:25, 35:3, 37:6, 37:12, 38:8, 38:10, 39:18
**seeing** [1] - 35:2
**seek** [3] - 13:19, 31:22, 36:11
**seeking** [5] - 31:16, 31:17, 31:20, 33:21, 34:4
**sell** [13] - 6:14, 9:19, 9:20, 9:24, 10:6, 10:13, 21:14, 23:13, 33:8, 33:19, 33:20
**selling** [3] - 6:9, 32:1, 32:5
**sent** [2] - 29:7, 29:11
**set** [4] - 10:2, 13:8, 18:9, 19:20
**sets** [1] - 5:4
**settled** [1] - 40:8
**settlement** [1] - 11:1
**several** [2] - 2:21, 3:11
**shipped** [1] - 28:12
**shipping** [2] - 28:17, 29:16
**ships** [1] - 29:9
**shorthand** [1] - 8:7
**shortly** [1] - 20:17
**show** [19] - 6:8, 8:23, 9:3, 9:10, 9:13, 11:21, 11:22, 16:14, 16:16, 17:6, 17:16, 18:20, 19:1, 19:2, 20:18, 27:4, 32:12, 36:15
**showcase** [1] - 28:24
**showcased** [3] - 28:20, 29:13, 29:17
**showcasing** [1] - 28:25
**showing** [2] - 8:23, 38:1
**shown** [5] - 9:14, 18:5, 19:8, 35:18, 36:14
**shows** [3] - 8:25, 11:3, 38:20
**side** [2] - 11:15, 13:25
**significant** [4] - 20:20,

20:23, 30:9, 40:10
**similar** [2] - 17:2, 31:12
**simple** [1] - 14:10
**simply** [3] - 7:20, 15:14, 21:3
**single** [1] - 20:7
**sitting** [1] - 25:18
**situation** [2] - 34:18, 35:7
**skilled** [1] - 11:11
**small** [2] - 21:22, 21:24
**Snell** [1] - 2:15
**sold** [3] - 6:7, 15:9
**sole** [2] - 18:6, 19:12
**sometime** [1] - 25:19
**somewhat** [2] - 12:3, 30:23
**somewhere** [2] - 9:1, 20:19
**sorry** [1] - 30:15
**sort** [3] - 5:9, 32:5, 32:6
**sought** [3] - 24:8, 31:20, 35:22
**source** [1] - 41:12
**sources** [3] - 32:15, 32:16, 32:21
**South** [1] - 1:24
**special** [3] - 8:15, 8:17
**specific** [12] - 3:5, 13:1, 16:14, 16:25, 24:23, 26:22, 28:16, 29:23, 39:7, 39:13, 39:15, 39:22
**specifically** [2] - 32:19, 32:21
**spend** [1] - 36:11
**stacks** [1] - 33:11
**stand** [1] - 23:17
**standard** [1] - 3:2
**start** [2] - 2:6, 35:16
**started** [2] - 24:14, 39:12
**starting** [2] - 12:18, 35:17
**state** [10] - 8:13, 8:18, 8:25, 15:9, 19:21, 20:23, 27:14, 27:19, 27:21, 40:22
**statement** [1] - 19:7
**statements** [1] - 38:22
**STATES** [1] - 1:1
**states** [3] - 19:21, 27:16, 36:3
**States** [29] - 6:7, 6:14, 8:10, 8:12, 8:18, 15:4, 16:15, 17:5, 17:12, 18:14, 20:10,

20:19, 23:7, 25:18, 26:17, 28:1, 28:10, 28:13, 28:17, 28:21, 29:7, 29:16, 30:5, 33:5, 33:9, 34:12, 35:5, 35:13, 40:17
**statute** [14] - 9:17, 10:13, 25:8, 25:14, 25:21, 27:1, 27:5, 27:24, 28:18, 29:3, 31:11, 40:12, 40:15, 40:20
**statutes** [1] - 3:4
**statutory** [1] - 40:24
**stay** [6] - 4:1, 5:22, 6:22, 6:25, 26:20, 41:4
**stayed** [1] - 10:18
**step** [1] - 26:3
**still** [1] - 14:14
**stipulate** [2] - 22:12, 22:14
**stipulated** [3] - 4:5, 33:7, 33:18
**stipulating** [1] - 5:2
**stipulation** [6] - 4:25, 5:4, 5:16, 21:14, 22:17, 22:18
**stonewalling** [1] - 36:21
**stood** [1] - 27:11
**stopped** [1] - 24:15
**story** [1] - 41:1
**stream** [3] - 15:14, 15:17, 15:23
**Street** [1] - 1:24
**strike** [3] - 4:13, 4:15, 4:16
**striking** [1] - 2:24
**strong** [1] - 23:21
**stronger** [3] - 7:12, 7:13, 15:12
**strongest** [1] - 14:17
**stunning** [1] - 25:6
**subject** [5] - 16:9, 20:22, 24:16, 27:10, 41:25
**submission** [1] - 42:14
**submit** [2] - 13:11, 13:21
**submitted** [1] - 13:9, 18:22
**subsections** [1] - 3:6
**subsidiaries** [1] - 29:21
**subsidiary** [1] - 29:18
**substantial** [1] - 37:21
**sued** [2] - 27:19, 37:8
**sufficient** [3] - 3:4,

26:23, 36:13
**suit** [1] - 27:20
**support** [4] - 19:21, 20:3, 38:9, 38:10
**supposed** [3] - 24:19, 38:12, 42:1
**supposedly** [1] - 38:13
**Supreme** [3] - 14:18, 15:22, 20:10
**sustained** [1] - 20:7
**Synthes** [2] - 31:10, 40:1
**SYNTHES** [1] - 31:10
**system** [20] - 25:12, 26:7, 26:10, 26:13, 28:12, 28:19, 28:25, 29:4, 29:6, 29:11, 29:13, 33:4, 33:19, 33:25, 34:11, 34:13, 34:14, 35:5
**systems** [1] - 33:8

**T**

**talks** [1] - 19:2
**Tanck** [3] - 2:7, 24:11, 25:2
**TANCK** [12] - 1:14, 2:7, 3:16, 5:1, 5:18, 25:1, 25:11, 33:16, 38:4, 42:4, 42:7, 42:12
**team** [3] - 29:8, 29:11, 29:12
**technology** [1] - 11:13
**THE** [39] - 1:2, 1:14, 1:19, 2:4, 2:14, 2:18, 2:20, 2:21, 4:21, 5:11, 5:19, 5:24, 6:16, 7:11, 8:9, 9:17, 9:22, 9:24, 12:8, 12:12, 21:3, 21:7, 22:9, 22:12, 22:15, 22:22, 23:8, 23:19, 23:24, 24:3, 24:25, 25:10, 33:14, 38:3, 38:5, 42:3, 42:6, 42:11, 42:13
**theory** [3] - 15:15, 15:17, 15:24
**therefore** [1] - 4:8
**they've** [7] - 7:15, 7:18, 13:2, 32:2, 32:3, 32:14, 41:19
**thinks** [2] - 36:13, 38:1
**third** [2] - 6:21, 8:20
**three** [11] - 5:9, 5:10, 6:19, 11:7, 11:9,

16:17, 16:20, 17:15, 27:4
**three-day** [3] - 11:7, 11:9
**throughout** [1] - 15:4
**throwing** [1] - 23:19
**tied** [1] - 24:24
**today** [12] - 3:18, 3:19, 3:20, 3:23, 4:3, 4:8, 4:10, 4:14, 4:17, 10:5, 22:17, 23:17
**together** [1] - 14:15
**topic** [1] - 23:22
**totally** [1] - 38:21
**tough** [1] - 8:16
**trade** [1] - 10:2
**tradeshow** [2] - 9:3, 10:1
**tradeshows** [2] - 15:6, 28:20
**TRANSCRIPT** [1] - 1:11
**transcript** [3] - 38:19, 42:22
**transfer** [10] - 3:22, 4:19, 5:22, 6:18, 6:20, 7:6, 7:7, 9:4, 10:8, 32:14
**transferred** [2] - 11:15, 12:1
**transferring** [1] - 35:16
**transportation** [1] - 34:13
**transported** [1] - 28:13
**travel** [1] - 32:20
**trial** [2] - 10:23, 22:20
**triggered** [1] - 40:23
**TRO** [2] - 10:25, 24:9
**trouble** [1] - 12:4
**true** [1] - 15:15
**truth** [1] - 17:21
**try** [2] - 15:16, 25:4
**trying** [1] - 36:25
**turn** [4] - 6:17, 14:7, 16:4, 36:20
**turned** [1] - 21:23
**twice** [1] - 10:24
**two** [18] - 3:20, 4:12, 4:18, 6:23, 6:24, 7:3, 7:5, 11:1, 14:8, 16:11, 22:4, 28:20, 29:2, 33:11, 35:14, 39:10, 41:5, 41:22
**Twombly** [1] - 3:1

**U**

**U.S** [10] - 8:7, 13:4,

8

14:12, 18:9, 21:13,
25:23, 29:8, 29:11,
29:12, 29:21
**unaffiliated** [1] - 30:7
**under** [21] - 3:1, 4:5,
5:5, 12:9, 25:13,
25:21, 26:22, 26:25,
27:4, 27:5, 27:23,
29:2, 30:13, 30:20,
30:23, 31:6, 31:23,
31:24, 35:10, 37:24,
42:14
**undertaken** [1] - 13:14
**undisputed** [4] - 17:4,
17:5, 21:12, 27:7
**uniformly** [1] - 12:20
**unilaterally** [1] - 24:12
**unique** [1] - 11:18
**unit** [1] - 29:16
**United** [29] - 6:7, 6:14,
8:10, 8:12, 8:18,
15:4, 16:15, 17:5,
17:12, 18:14, 20:10,
20:19, 23:7, 25:18,
26:16, 28:1, 28:9,
28:13, 28:17, 28:21,
29:7, 29:16, 30:5,
33:5, 33:9, 34:11,
35:5, 35:12, 40:17
**UNITED** [1] - 1:1
**up** [15] - 10:2, 11:3,
12:7, 15:8, 17:10,
17:12, 18:9, 19:6,
19:20, 19:22, 22:16,
27:11, 28:23, 33:11,
35:6

## V

**vacancies** [1] - 12:13
**various** [1] - 28:19
**Vegas** [9] - 1:7, 1:18,
1:22, 8:23, 9:3, 9:13,
10:6, 17:6, 18:20
**venue** [4] - 9:5, 32:13,
32:20, 32:22
**versus** [3] - 2:5, 24:22,
24:23
**videos** [2] - 29:6,
29:12
**views** [1] - 7:9
**vigorous** [2] - 29:3,
32:25
**violate** [1] - 16:2
**violated** [4] - 33:9,
34:9, 35:8, 41:8
**violating** [1] - 21:18
**violation** [4] - 28:17,
33:21, 34:3, 41:20
**violations** [2] - 33:12,

42:1
**Virginia** [1] - 1:24
**virtue** [1] - 7:20
**vs** [1] - 1:6

## W

**wait** [1] - 10:1
**waived** [1] - 35:23
**wants** [1] - 37:3
**website** [10] - 7:20,
8:24, 16:24, 17:1,
17:2, 17:8, 28:4,
29:14, 29:19, 29:20
**WEDNESDAY** [1] - 2:1
**week** [2] - 5:9, 42:15
**weeks** [5] - 5:10, 11:2,
41:10
**Whitney** [1] - 2:17
**whole** [3] - 7:6, 19:18,
28:1
**willing** [3] - 22:12,
22:14, 23:13
**Wilmer** [1] - 2:16
**witnesses** [4] - 10:11,
32:15, 32:16, 32:20
**word** [2] - 5:25, 19:11
**words** [3] - 9:18,
18:10, 18:12
**works** [2] - 26:10,
34:21
**world** [2] - 6:4, 11:17
**worldwide** [2] - 8:24,
30:8
**worry** [1] - 21:15
**written** [1] - 25:5

## X

**XTS** [28] - 6:6, 16:15,
16:23, 17:6, 18:4,
18:5, 18:13, 20:1,
24:24, 25:12, 25:22,
26:7, 26:13, 28:12,
28:19, 28:24, 29:4,
29:6, 29:11, 29:13,
33:4, 33:8, 34:11,
34:13, 34:14, 35:5

## Y

**year** [1] - 11:25
**years** [1] - 22:4
**York** [2] - 1:15

## Z

**zero** [3] - 11:23, 21:16